## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CalAmp Corp., *et al.*, | Case No. 24-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' APPLICATION FOR APPOINTMENT
### OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors") seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing the Debtors to retain and appoint Stretto, Inc. ("Stretto") as claims and noticing agent ("Claims and Noticing Agent") in these chapter 11 cases (the "Chapter 11 Cases") effective as of the Petition Date.  In support of this application, the Debtors submit the declaration of Sheryl Betance (the "Betance Declaration"), attached hereto as **Exhibit B**.

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 11 Cases, the Debtors, property of the Debtors' estates, and these matters under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: CalAmp Corp. (7070); CalAmp Wireless Networks Corporation (1740); LoJack Global LLC (4794); and Synovia Solutions LLC (2994).  The Debtors' service address is 15635 Alton Parkway, Suite 250, Irvine, CA  92618.

2.      Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of the Bankruptcy Code, Bankruptcy Local Rules 2002-1(f) and 9013-1(m), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## GENERAL BACKGROUND

5.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed in these Chapter 11 Cases.

6.      The Debtors are a connected intelligence company that leverages a data-driven solutions ecosystem to help people and organizations improve operational performance.  They solve complex problems for customers within the market verticals of transportation and logistics,

IMPAC 11532633v.4

commercial and state and local government vehicle fleets, industrial equipment, school district yellow and white fleets, and consumer vehicles by providing solutions that track, monitor, and protect their vital assets and assist with stolen vehicle recovery. The data and insights enabled by the Debtors provides real-time visibility into a user's vehicles, assets, drivers, and cargo, giving organizations a greater understanding and control of their operations. Ultimately, these insights drive operational visibility, safety, efficiency, maintenance, and sustainability for organizations globally.

7.     The Debtors offer flexible solutions to meet the requirements of varying organizations, business processes, and operational strategies. One of the key components of the Debtors' business is the CalAmp Telematics Cloud platform (the "CTC"). The CTC is the core engine that enables seamless management of data through a diverse set of assets, from service vehicles to high-value equipment. The CTC is an enablement platform that connects the Debtors' customers to provide data and insights for a wide range of applications and software services. This dependable and highly scalable platform seamlessly integrates with the Debtors' edge computing devices to provide customers detailed information and insights via Application Programming Interfaces ("APIs") or software applications built on this platform.

8.     The Debtors also offer a series of telematics edge computing devices that serve as the foundation of their mobile connected ecosystem by collecting data insights from vehicles, drivers, assets, and cargo. These wireless enabled devices—including asset tracking units, mobile telematics devices, fixed and mobile wireless gateways and routers—underpin the Debtors' wide range of proprietary and third-party software applications and services for business-critical deployments demanding secure and reliable communications and controls anywhere in the world. The Debtors' customers select products and solutions based on optimized feature sets,

3

programmability, configurability, manageability, long-term support, reliability and, in particular, overall value.

9.      The information captured through the edge computing products and the CTC helps companies more efficiently manage their vital assets including fleet video intelligence, remote asset tracking, real-time crash response and driver behavior scoring, among others. Customers can choose to access this information via intuitive purpose-built Software-as-a-Service ("SaaS") applications and/or they can programmatically integrate information from the CTC with their own custom in-house applications and workflows using open APIs also offered by the Debtors.  In this way, customers who want a complete turnkey solution can quickly leverage the Debtors' information and insights while those customers wishing to integrate that information into their own applications and processes can also easily do so.

10.      Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Jikun Kim in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), which is incorporated herein by reference.[2]

11.      As detailed in the First Day Declaration, these Chapter 11 Cases are "prepackaged" cases commenced for the purpose of implementing restructuring transactions agreed upon among the Debtors and the Consenting Lenders.  Prior to the Petition Date, the Debtors entered into the Restructuring Support Agreement, dated as of May 31, 2024.  A joint prepackaged chapter 11 plan of reorganization reflecting the terms of the Restructuring Support Agreement (as may be amended, modified, or supplemented, the "Plan") was filed

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

contemporaneously herewith, along with (a) a corresponding disclosure statement (as may be amended, modified or supplemented, the "Disclosure Statement") and (b) a motion seeking, among other things, approval of the Disclosure Statement and confirmation of the Plan. The Plan was solicited prior to the Petition Date and the Debtors received approval from 100% of the Term Loan Secured Party—the only impaired class entitled to vote on the Plan. Importantly, the Plan contemplates that all Allowed Secured Notes Claims and Allowed General Unsecured Claims (each as defined in the Plan) will be unimpaired with respect to their legal, equitable, and contractual rights to avoid disruption to the normal operations of the Debtors' business.

## **RELIEF REQUESTED**

12.     The Debtors seek entry of an order appointing Stretto as the Claims and Noticing Agent for the Debtors and their Chapter 11 Cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' Chapter 11 Cases. The Debtors' selection of Stretto to act as the Claims and Noticing Agent satisfies the Claims Agent Protocol, in that the Debtors obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise. The terms of Stretto's retention are set forth in the Engagement Agreement attached as **Exhibit 1** to the Proposed Order (the "Engagement Agreement"); *provided* that the Debtors are seeking approval solely of the terms and provisions of the Engagement Agreement as set forth in this application and the Proposed Order attached hereto.

13.     Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed. Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless

the Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter." In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

14. Bankruptcy Rule 2002 generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002(f). Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

15. In addition, Local Rule 2002-1(f) provides:

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [claims and noticing services].

Del. Bankr. L.R. 2002-1(f).   Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

16.     For all of the foregoing reasons, the Debtors believe that the appointment of Stretto as the Claims and Noticing Agent in these Chapter 11 Cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.   Furthermore, the Debtors submit that the fees and expenses that would be incurred by Stretto under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

17.     By separate application, the Debtors intend to seek authorization to retain and employ Stretto as the administrative agent in these Chapter 11 Cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

**STRETTO'S QUALIFICATIONS**

18.     Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.   Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity.   Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the

7

efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include: *In re Express, Inc.*, Case No. 24-10831 (KBO) (Bankr. D. Del. Apr. 24, 2024); *In re ICON Aircraft, Inc.*, Case No. 24-10703 (CTG) (Bankr. D. Del. Apr. 5, 2024); *In re Millennial Benefit Mgmt. Corp.*, Case No. 23-12083 (TMH) (Bankr. D. Del. Jan. 4, 2024); *In re Potrero Med., Inc.*, Case No. 23-11900 (LSS) (Bankr. D. Del. Nov. 28, 2023); *In re Smart Earth Techs. LLC*, Case No. 23-11866 (KBO) (Bankr. D. Del. Nov. 16, 2023); *In re Water Gremlin Co.*, Case No. 23-11775 (LSS) (Bankr. D. Del. Nov. 1, 2023); *In re Unconditional Love Inc.*, Case No. 23-11759 (MFW) (Bankr. D. Del. Oct. 24, 2023); *In re MVK FarmCo LLC*, Case No. 23-11721 (LSS) (Bankr. D. Del. Oct 17, 2023); *In re IronNet, Inc.*, Case No. 23-11710 (BLS) (Bankr. D. Del. Oct. 13, 2023); *In re High Valley Invs., LLC*, Case No. 23-11616 (TMH) (Bankr. D. Del. Oct. 4, 2023).

19.     By appointing Stretto as the Claims and Noticing Agent in these Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

## **SERVICES TO BE PROVIDED**

20.     This application pertains only to the work to be performed by Stretto under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any work to be performed by Stretto outside of this scope is not covered by this application or by any order granting approval hereof. Specifically, Stretto will perform the following tasks, as necessary, in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

> (a)     Prepare and serve required notices and documents in these Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (i) notice of the commencement of these Chapter 11 Cases and the initial

meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these Chapter 11 Cases;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     Maintain an electronic platform for purposes of filing proofs of claim;

(g)     For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request,

9

provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:   (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)    Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information available);

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding these Chapter 11 Cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)     If these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the cases;

(s)     Thirty days prior to the close of these Chapter 11 Cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these Chapter 11 Cases;

10

(t)     Within seven days of notice to Stretto of entry of an order closing these Chapter 11 Cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(u)     At the close of these Chapter 11 Cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Federal Archives Record Administration, or (B) any other location requested by the Clerk's office, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

21.     The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Stretto.

## PROFESSIONAL COMPENSATION

22.     The Debtors request that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.  Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for the Required Consenting Lenders, counsel for any official committee monitoring the expenses of the Debtors, and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

23.     Prior to the Petition Date, the Debtors provided Stretto an advance in the amount of $25,000.  Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance

11

under the Engagement Agreement during these Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

24.     Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Stretto's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Proposed Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these Chapter 11 Cases.

## **DISINTERESTEDNESS**

25.     Although the Debtors do not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

26.     Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

(a)     Stretto is not a creditor of the Debtors;

(b)     Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)     By accepting employment in these Chapter 11 Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)     Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)     Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not intentionally misrepresent any fact to any person;

(h)     Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Stretto as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

27.     Stretto will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## COMPLIANCE WITH CLAIMS AND NOTICING AGENT PROTOCOL

28.     This application complies with the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

29.     To the extent that there is any inconsistency between this application, the order granting the relief in the application, and the Engagement Agreement, the order granting relief in the application shall govern.

IMPAC 11532633v.4

## **WAIVER OF BANKRUPTCY RULE 6004(a) and 6004(h)**

30.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **NOTICE**

31.     The Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the Office of the United States Trustee; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) counsel to the Required Consenting Lenders; (d) the Secured Notes Collateral Agents; (e) the Internal Revenue Service; (f) the Securities and Exchange Commission; (g) the United States Attorney's Office for the District of Delaware; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## **NO PRIOR REQUEST**

32.     No prior request for the relief sought in this application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

14

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: June 3, 2024

*/s/ Jikun Kim*
Name: Jikun Kim
Title: Chief Financial Officer

**<u>EXHIBIT A</u>**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CalAmp Corp., *et al.*, | Case No. 24-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |
| | **Re: Docket No. __** |

**ORDER AUTHORIZING RETENTION AND APPOINTMENT
OF STRETTO, INC. AS CLAIMS AND NOTICING AGENT**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), authorizing the Debtors to retain and appoint Stretto, Inc. ("Stretto") as claims and noticing agent ("Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Local Rule 2002-1(f) to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtors' Chapter 11 Cases and (c) provide such other administrative services, all as more fully set forth in the Application; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: CalAmp Corp. (7070); CalAmp Wireless Networks Corporation (1740); LoJack Global LLC (4794); and Synovia Solutions LLC (2994).  The Debtors' service address is 15635 Alton Parkway, Suite 250, Irvine, CA  92618.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the

relief requested in the Application is in the best interests of the Debtors' estates, their creditors,

and other parties in interest; and this Court having found that the Debtors' notice of the Application

and opportunity for a hearing on the Application were appropriate under the circumstances and no

other notice need be provided; and this Court having reviewed the Application and having heard

the statements in support of the relief requested therein at a hearing before this Court

(the "Hearing"); and this Court having determined that the legal and factual bases set forth in the

Application and at the Hearing establish just cause for the relief granted herein; and upon all of

the proceedings had before this Court; and after due deliberation and sufficient cause appearing

therefor, it is HEREBY ORDERED THAT:

1.      Notwithstanding the terms of the Engagement Agreement attached hereto as

**Exhibit 1**, the Application is approved solely as set forth in this Order.

2.      The Debtors are authorized to retain Stretto as Claims and Noticing Agent effective

as of the Petition Date under the terms of the Engagement Agreement, and Stretto is authorized

and directed to perform noticing services and to receive, maintain, record, and otherwise

administer the proofs of claim filed in these Chapter 11 Cases (if any), and all related tasks, all as

described in the Application.

3.      Stretto shall serve as the custodian of court records and shall be designated as the

authorized repository for all proofs of claim filed in these Chapter 11 Cases (if any) and is

authorized and directed to maintain official claims registers for each of the Debtors, to provide

public access to every proof of claim unless otherwise ordered by the Court, and to provide the

Clerk with a certified duplicate thereof upon the request of the Clerk.

IMPAC 11532633v.4

4.      Stretto is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Stretto is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Stretto in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Stretto and the rates charged for each, and to reimburse Stretto for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Stretto to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Stretto shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred. With respect to services provided prior to the effective date of a chapter 11 plan in these Chapter 11 Cases, Stretto shall serve monthly invoices on the Debtors, the United States Trustee, counsel for the Debtors, counsel for the Required Consenting Lenders, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.

8.      The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Stretto under this Order shall be an administrative expense of the Debtors' estates.

10.     Stretto may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, Stretto may hold its advance under the

Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

11.      The Debtors shall indemnify Stretto under the terms of the Engagement Agreement, as modified pursuant to this Order.

12.      Stretto shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Engagement Agreement for services, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court.

13.      Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify Stretto, or provide contribution or reimbursement to Stretto, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from Stretto's gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of Stretto's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which Stretto should not receive indemnity, contribution, or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.      If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these Chapter 11 Cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these Chapter 11 Cases, Stretto believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including the advancement of defense costs, Stretto must file an application therefor in this Court,

4

and the Debtors may not pay any such amounts to Stretto before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Stretto for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify Stretto.  All parties in interest shall retain the right to object to any demand by Stretto for indemnification, contribution, or reimbursement.

15.    The limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services to be provided pursuant to this Order.

16.    In the event Stretto is unable to provide the services set out in this Order, Stretto will immediately notify the Clerk and the Debtors' counsel and, upon approval of the Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

17.    The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by Stretto but is not specifically authorized by this Order.

18.    The Debtors and Stretto are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

19.    Notwithstanding any term in the Engagement Agreement to the contrary (including with regard to paragraph 15 of the Engagement Agreement), the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

20.    Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

21.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

22.     Stretto shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of the Court.

23.     In the event of any inconsistency between the Engagement Agreement, the Application and the Order, the Order shall govern.

24.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

6

# **EXHIBIT 1**

**Engagement Agreement**

# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of May 8, 2024 between Stretto, Inc. ("**Stretto**") and CalAmp Corp. (together with its affiliates and subsidiaries, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Company with consulting services regarding (i) legal noticing, maintenance of claims registers, creditor mailing matrices, an electronic platform for filing proofs of claim, plan solicitation, balloting, tabulation of votes, disbursements, and administrative support in preparation of schedules of assets and liabilities and statements of financial affairs ("**Claims Administration, Noticing, and Solicitation Services**"); and (ii) crisis communications, claims analysis and reconciliation, preference analysis and recovery, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations, or court rules or orders (all such services collectively, the "**Services**").

   (b) The Company acknowledges and agrees that Stretto will often take direction from the Company's representatives, employees, agents, and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Company agrees to be bound by, any requests, advice, or information provided by the Company Parties to the same extent as if such requests, advice, or information were provided by the Company.

   (c) The Company agrees and understands that Stretto shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Company. Stretto's charges for Services through the effective date of a chapter 11 plan shall be at the rates attached hereto (the "**Preferred Rate Structure**"). The Company agrees that the Preferred Rate Structure shall not be applicable to Services provided to the entity or entities (including the Company) responsible for implementing a confirmed and effective chapter 11 plan and that such Services will be provided at Stretto's then prevailing rates. The Company agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Company no less frequently than monthly. All invoices shall be due and payable upon receipt. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Company before the performance of Services hereunder. If any amount is unpaid

---

[1]     The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case. Each affiliated entity shall be jointly and severally liable for the Company's fees and expenses.

as of 30 days after delivery of an invoice, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(c) In the case of a dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

(d) The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof. Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of, or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Stretto an advance of $\underline{\hspace{0.5cm}25,000\hspace{0.5cm}}$. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all prepetition fees and expenses. Company shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount.  Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Preferred Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Company of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Company using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Banc of California
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Stretto, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

**3.  Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Company promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Company seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Company shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4.  **Confidentiality**

(a)  The Company and Stretto agree to keep confidential all non-public records, systems, procedures, software, and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently developed by the receiving party, lawfully obtained by the receiving party from a third party, or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b)  If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent such party's counsel in good faith determines such disclosure can be limited.

5.  **Property Rights**

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation, and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Company hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored, and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Company do not vest in the Company any rights in such Property. Such Property is only being made available for the Company's use during and in connection with the Services provided by Stretto hereunder.

6.  **Bank Accounts**

At the request of the Company or the Company Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate cash management and distributions pursuant to a chapter 11 plan or other transaction. To the extent that certain financial products are provided to the Company pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

7.  **Term and Termination**

(a)  This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Company's restructuring under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay Stretto invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b)  If this Agreement is terminated after Stretto is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c)  If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services, and assistance required for such an orderly transfer. The Company agrees to pay for such Services pursuant to the Preferred Rate Structure.

## 8. No Representations or Warranties

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Company hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness, or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

## 9. Indemnification

(a) To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors, and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities, and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of, or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation, or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Company's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's gross negligence or willful misconduct.

(d) The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

## 10. Limitations of Liability

Except as expressly provided herein, Stretto's liability to the Company for any Losses, unless due to Stretto's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company to Stretto for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Stretto be liable for any indirect, special, or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## 11. Company Data

(a) The Company is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**"). Stretto bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

≡ STRETTO

(b) The Company agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Company has full authority to deliver such information to Stretto; and (ii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) Any data, storage media, programs or other materials furnished to Stretto by the Company may be retained by Stretto until the Services provided hereunder are paid in full. The Company shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data, or information provided by the Company to Stretto.

(d) Stretto and the Company agree that this Agreement is subject to the terms set forth in the GDPR Addendum attached hereto as Exhibit A, which are incorporated herein by reference.

(e) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a) Definitions.  In this Section,
   (i) "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii) "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to any Company data provided to Stretto by the Company in order for Stretto to provide Services under this Agreement; and
   (iii) "**Commercial Purposes**," "**Sell**," "**Business**," and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Company is considered a Business under California law, and subject to the terms of this Section 12, Stretto will act solely as Company's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto certifies it will not: (i) Sell Personal Information or (ii) collect, retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including collecting, retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA.

**13. Non-Solicitation**

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ, or otherwise retain as employees, consultants, or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

**14. Force Majeure**

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial

STRETTO

or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

### 15. Choice of Law

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

### 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act.  Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Company, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

### 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms, and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements, and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal, or unenforceable, the validity, legality, and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

### 18. Effectiveness of Counterparts

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

### 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:          Stretto
                        410 Exchange, Ste. 100

Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Company:     CalAmp Corp.
                       15635 Alton Parkway, Ste. 250
                       Irvine, CA 92618
                       Email: legal@calamp.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

Stretto

By:  Sheryl Betance

Title:  Senior Managing Director

CalAmp Corp.

By:  Jikun Kim

Title:  Chief Financial Officer

DocuSign Envelope ID: EEBBCA8B-2EFF-43F3-B7B9-C6FE36D2443A

**Exhibit A**

STRETTO

## <u>GDPR Addendum</u>

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**")[2] and the Company (together, the "**Parties**").

### RECITALS

**WHEREAS**,

(A)     The Processor and the Company have agreed to the following terms regarding the Processing of Company Personal Data.

(B)     The Company acts as a Controller of the Company Personal Data.

(C)     The Company wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Company instructs the Processor to process Company Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Company and the Processor agree as follows:

1.     **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Company Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Company pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Company's employees, clients, customers, creditors, equity interest holders, or counter-parties;

(c)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(d)     "**Services**" means the services the Processor provides to the Company pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Company in connection with the Agreement;



---

[2] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

(f)    "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)    The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.    **Obligations of the Company.**  The Company agrees and warrants:

(a)    that the Processing, including the transfer itself, of the Company Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)    that it has instructed and throughout the duration of the Services will instruct the Processor to process the Company Personal Data transferred only on the Company's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)    that the Processor will provide sufficient guarantees in respect of the technical and organizational security measures;

(d)    that after assessment of the requirements of the applicable data protection law, the technical and organizational security measures are appropriate to protect the Company Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)    that it will ensure compliance with the technical and organizational security measures; and

(f)    that the Company Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.    **Obligations of the Processor.**  The Processor agrees and warrants:

(a)    to comply with the Data Protection Laws;

(b)    to process the Company Personal Data only on behalf of the Company and in compliance with its instructions and this Addendum; if it cannot provide such compliance for whatever reasons, it agrees to inform promptly the Company of its inability to comply, in which case the Company is entitled to suspend the processing of data and/or terminate the Agreement;

(c)     that it has no reason to believe that the legislation applicable to it prevents it from fulfilling the instructions received from the Company and its obligations under the Agreement and that in the event of a change in this legislation which is likely to have a substantial adverse effect on the warranties and obligations provided by the Clauses, it will promptly notify the change to the Company as soon as it is aware, in which case the Company is entitled to suspend the transfer of data and/or terminate the Agreement;

(d)     that it has implemented reasonable and appropriate technical and organizational security measures before processing the Company Personal Data;

(e)     that it will promptly notify the Company about:

  i.     any legally binding request for disclosure of the Company Personal Data by a law enforcement authority unless otherwise prohibited, such as a prohibition under criminal law to preserve the confidentiality of a law enforcement investigation;

  ii.     any accidental or unauthorized access; and

  iii.     any request received directly from any data subject without responding to that request, unless it has been otherwise authorized to do so by the Company or as required by any applicable law;

(f)     to deal promptly and properly with all inquiries from the Company relating to its Processing of the Company Personal Data and to abide by the advice of the supervisory authority with regard to the processing of the Company Personal Data;

(g)     to take reasonable steps to ensure the reliability of any employee, agent, or contractor of any Subprocessor who may have access to the Company Personal Data, ensuring in each case that access is strictly limited to those individuals who need to know or access the relevant Company Personal Data, as strictly necessary to perform the Services under the Agreement, and to comply with Data Protection Laws in the context of that individual's duties to the Subprocessor, ensuring that all such individuals are subject to confidentiality undertakings or professional or statutory obligations of confidentiality; and

(h)     that it shall not use (or disclose any Company Personal Data to) any Subprocessor unless required or authorized by the Company with prior written consent.

**4.     Obligations after Termination of Personal Data Processing Services.**

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Company, return all Company Personal Data and the copies thereof to the Company or shall destroy all Company Personal Data and certify to the Company that it has done so, unless legislation imposed upon the Processor prevents it from returning or destroying all or part of the Company Personal Data.  In that case, the Processor warrants that it will guarantee the confidentiality of the Company Personal Data and will not further process the Company Personal Data.

DocuSign Envelope ID: EEBBCA8B-2EFF-43F3-B7B9-C6FF36D2443A

STRETTO

(b)     The Processor and any Subprocessor warrant that upon request of the Company and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.     **Notices.**  All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

**STRETTO**

# Preferred Rate Structure

**Consulting Services and Rates**

*Analyst*                                                              *Waived*
The Analyst processes incoming mail, creditor correspondence and returned mail, and supports the case team with administrative tasks as required.

*Consultant (Associate/Senior Associate)*                *$70 - $200*
The Associate manages the various data collection processes required by the Chapter 11 process. This includes, among other things, compiling the creditor matrix and Schedules/SOFAs (and generating drafts of same for counsel and advisors), reviewing and processing claims and ballots, overseeing contract review, overseeing all physical and electronic noticing, and generating custom claim and ballot reports.

The Senior Associate leads complex data aggregation projects for compilation of Schedules & SOFA, the creditor matrix and special notice lists. In addition, the Senior Associate oversees quality control and on mailings and reports. Stretto's Senior Associates average over seven years of experience.

*Director/ Managing Director*                               *$210 - $250*
The Director is the primary contact for the company, counsel and other professionals and oversees and supports all aspects of the administration for the entirety of an engagement.

The Managing Director provides industry and/or project specific expertise to support complex matters. Professionals, including Stretto's executive management team will serve in this role when appropriate.

Stretto's Directors and Managing Directors have over fifteen years of experience and are typically former restructuring professionals.

*Executive Management*                                        *Waived*
Our Executive Management team oversees Stretto's Corporate Restructuring group and will provide consulting support to this matter at no charge.

**Solicitation, Balloting and Tabulation Rates**

*Solicitation Associate*                                          *$230*
The Solicitation Associate reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. The Solicitation Associate also prepares customized reports relating to voting and other corporate events, including exchange offers and rights subscriptions. The Solicitation Associate also interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and related communications.

*Director of Securities & Solicitations*                     *$250*
The Director of Securities leads public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of related processes.



STRETTO

### Printing & Noticing Services

| | |
|---|---|
| Printing | $0.10 (per image) |
| Postage/Overnight Delivery | Preferred Rates |
| ECF Email Noticing | Waived |
| Fax Noticing | $0.10 (per page) |
| Envelopes | Varies by Size |
| Coordinate and Publish Legal Notices | Preferred Pricing Available on Request |
| Public Securities Events | Varies by Event |

### Electronic Services

| | |
|---|---|
| Case Homepage Set-Up and Hosting | Waived |
| Robotic Process Automation[3] | Starting at $0.48 (per process) |
| Encrypted HTTPS Bandwidth (volume discount applies) | Starting at $0.125 (per MB) |
| Online Monthly Operating Report Platform Subscription | Waived |

### Claims Administration & Management Expenses

| | |
|---|---|
| License Fee and System Maintenance | $0.10 (per creditor per month) |
| Database and System Access (Unlimited Users) | Waived |
| Online Claims Filing Portal | Waived |
| Online Ballots Filing Portal | Waived |
| Preference Analysis (Initial Preference Review) | Standard Hourly Rates |

### Document Management Services

| | |
|---|---|
| Electronic Imaging (Per Imaged Page) | $0.10 |
| FedRAMP Compliant File Retention (volume discount applies) | Starting at $0.125 (per MB) |
| Virtual Data Room | Available on Request |

### Call Center Support Services

| | |
|---|---|
| Case-Specific Toll-Free Number and Voice-Mail Box | Waived |
| Interactive Voice Response (Per Minute) | Waived |
| Monthly Maintenance Charge | Waived |
| Management of Call Center (Per Hour) | Standard Hourly Rates |

### Disbursement Services

| | |
|---|---|
| Check Issuance | Available on Request |
| Account Opening Fee | Available on Request |
| W-9 Mailing and Maintenance of TIN Database | Standard Hourly Rates |
| Disbursements - Record to Transfer Agent | Quoted at Time of Request |



---

[3] Includes ECF docket automation, subscription-based docket notifications, USPS bulk mail operations, address validation, e-filing transactions, cloud computing charges, and related activities

# **EXHIBIT B**

**Betance Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CalAmp Corp., *et al.*, | Case No. 24-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

**DECLARATION OF SHERYL BETANCE IN SUPPORT OF**
**DEBTORS' APPLICATION FOR APPOINTMENT OF**
**STRETTO, INC. AS CLAIMS AND NOTICING AGENT**

Pursuant to 28 U.S.C. § 1746, I, Sheryl Betance, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Senior Managing Director of Corporate Restructuring at Stretto, Inc. ("Stretto"), a chapter 11 administrative services firm with offices at 410 Exchange, Ste. 100, Irvine, CA 92602.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration is made in support of the above-captioned debtors' (collectively, the "Debtors") *Application for Appointment of Stretto, Inc. as Claims and Noticing Agent*, to which this declaration is attached (the "Application").[2]

**Qualifications**

3.      Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: CalAmp Corp. (7070); CalAmp Wireless Networks Corporation (1740); LoJack Global LLC (4794); and Synovia Solutions LLC (2994).  The Debtors' service address is 15635 Alton Parkway, Suite 250, Irvine, CA 92618.

[2]  Capitalized terms used but not otherwise defined herein have the meanings set forth in the Application.

11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include: *In re Express, Inc.*, Case No. 24-10831 (KBO) (Bankr. D. Del. Apr. 24, 2024); *In re ICON Aircraft, Inc.*, Case No. 24-10703 (CTG) (Bankr. D. Del. Apr. 5, 2024); *In re Millennial Benefit Mgmt. Corp.*, Case No. 23-12083 (TMH) (Bankr. D. Del. Jan. 4, 2024); *In re Potrero Med., Inc.*, Case No. 23-11900 (LSS) (Bankr. D. Del. Nov. 28, 2023); *In re Smart Earth Techs. LLC*, Case No. 23-11866 (KBO) (Bankr. D. Del. Nov. 16, 2023); *In re Water Gremlin Co.*, Case No. 23-11775 (LSS) (Bankr. D. Del. Nov. 1, 2023); *In re Unconditional Love Inc.*, Case No. 23-11759 (MFW) (Bankr. D. Del. Oct. 24, 2023); *In re MVK FarmCo LLC*, Case No. 23-11721 (LSS) (Bankr. D. Del. Oct 17, 2023); *In re IronNet, Inc.*, Case No. 23-11710 (BLS) (Bankr. D. Del. Oct. 13, 2023); *In re High Valley Invs., LLC*, Case No. 23-11616 (TMH) (Bankr. D. Del. Oct. 4, 2023).

## Services to be Rendered

4.      As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Stretto will perform, at the request of the Office of the Clerk of the Bankruptcy Court (the "Clerk"), the noticing and claims-related services specified in the Application and the Engagement Agreement, and, at the Debtors' request, any related administrative, technical, and support services as specified in the Application and the Engagement Agreement. In performing such services, Stretto will

charge the Debtors the rates set forth in the Engagement Agreement, which rate structure is attached as **Exhibit 1** to **Exhibit A** to the Application.

5.      Stretto represents, among other things, the following:

(a)      Stretto is not a creditor of the Debtors;

(b)      Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these Chapter 11 Cases;

(c)      By accepting employment in these Chapter 11 Cases, Stretto waives any rights to receive compensation from the United States government in connection with these Chapter 11 Cases;

(d)      In its capacity as the Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e)      Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these Chapter 11 Cases;

(f)      Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)      In its capacity as Claims and Noticing Agent in these Chapter 11 Cases, Stretto will not intentionally misrepresent any fact to any person;

(h)      Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)      Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)      None of the services provided by Stretto as Claims and Noticing Agent in these Chapter 11 Cases shall be at the expense of the Clerk's office.

6.      Although the Debtors do not propose to retain Stretto under section 327 of the Bankruptcy Code pursuant to the Application (such retention will be sought by separate application), I caused to be submitted for review by our conflicts system the names of potential parties-in-interest (the "Potential Parties in Interest") in these Chapter 11 Cases. A list of Potential

3

Parties in Interest**,** attached hereto as **<u>Exhibit 1</u>**, was provided by the Debtors and included, among other parties, the Debtors, non-Debtor affiliates, current and former directors and officers of the Debtors, significant stockholders, secured creditors, lenders, the Debtors' largest unsecured creditors on a consolidated basis, the United States Trustee and persons employed in the office of the United States Trustee, and other parties.  The Potential Parties in Interest list was compared to an internal database that includes, among others, Stretto's parent entities, affiliates, and subsidiaries. Stretto's internal database also includes Stone Point Capital LLC ("<u>Stone Point</u>"), its funds, and each such fund's respective portfolio companies as set forth in the list most recently provided to Stretto by Stone Point's internal compliance department (the "<u>Stone Point Searched Parties</u>").  The results of the conflict check were compiled and reviewed by Stretto professionals under my supervision.  At this time, and as set forth in further detail herein, Stretto is not aware of any connection that would present a disqualifying conflict of interest.  Should Stretto discover any new relevant facts or connections bearing on the matters described herein during the period of its retention, Stretto will use reasonable efforts to promptly file a supplemental declaration.

7.     To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Stretto, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Stretto has and will continue to represent clients in matters unrelated to these Chapter 11 Cases.  In addition, in matters unrelated to these Chapter 11 Cases, Stretto and its personnel have and will continue to have relationships personally or in the ordinary course of business with certain vendors, professionals, financial institutions, and other parties in interest that may be involved in the Debtors' Chapter 11 Cases.  Stretto may also provide professional services to entities or persons that may be creditors or parties in interest in these Chapter 11 cases, which services do not directly

4

relate to, or have any direct connection with, these Chapter 11 Cases or the Debtors.  Based upon a review of the Potential Parties in Interest:

- The list of Potential Parties in Interest identifies CalAmp Wireless Networks Corporation, which is one of the Debtors.  CalAmp Wireless Networks Corporation is a former defendant to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services.  The avoidance actions were closed in July 2020.   To the best of my knowledge, such relationship is materially unrelated to these Chapter 11 Cases.

- The list of Potential Parties in Interest identifies Insight Software LLC, one of Stretto's clients, as a creditor, vendor, and/or contract counterparty of the Debtors.  To the best of my knowledge, such relationship is materially unrelated to these Chapter 11 Cases.

- The list of Potential Parties in Interest also identifies UPS, which is a customer of Stretto Recovery Services, as a creditor, vendor, and/or contract counterparty of the Debtors, but such relationship is unrelated to the Debtors and their estates, assets, or businesses.

- The list of Potential Parties in Interest includes entities, as set forth on **Exhibit 2** attached hereto, which are current, former or potential defendants to avoidance actions brought under the Bankruptcy Code by clients of Stretto Recovery Services.  However, to the best of my knowledge, such relationships are materially unrelated to these Chapter 11 Cases.

8.      To the best of my knowledge, none of Stretto's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, or any attorney known by Stretto to be employed in the Office of the United States Trustee serving the District of Delaware.  The list of Potential Parties in Interest identifies the Honorable Mary F. Walrath, United States Bankruptcy Judge for the District of Delaware.  Denise Kaloudis, a Managing Director at Stretto, formerly worked as a law clerk to the Honorable Mary F. Walrath.  I have been advised that Denise Kaloudis did not work on matters involving the Debtors while employed as a law clerk to the Honorable Mary F. Walrath.

9.      Certain of Stretto's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties in interest in these cases.  Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors

5

while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when these Chapter 11 Cases were filed.  To the best of my knowledge, none of Stretto's professionals were partners of, or formerly employed within the last three years by firms that are Potential Parties in Interest or that have filed a notice of appearance in these Chapter 11 Cases.

10.     Stretto and its personnel in their individual capacities regularly utilize the services of law firms, investment banking and advisory firms, accounting firms, and financial advisors.  Such firms engaged by Stretto or its personnel may appear in chapter 11 cases representing the Debtors or parties in interest.  To the best of my knowledge, Stretto does not currently utilize the services of any law firms, investment banking and advisory firms, accounting firms, or financial advisors who have been identified as Potential Parties in Interest or who have filed a notice of appearance in these Chapter 11 Cases.

11.     In April 2017, Stretto was acquired by the Trident VI Funds managed by private equity firm Stone Point.  Stone Point is a financial services-focused private equity firm based in Greenwich, Connecticut.  The firm has raised and managed nine private equity funds – the Trident Funds – with aggregate committed capital of approximately $40 billion.  Stone Point targets investments in the global financial services industry and related sectors.

12.     The following disclosure is made out of an abundance of caution in an effort to comply with the Bankruptcy Code and Bankruptcy Rules.   Stretto has searched the names of the Debtors and the names of the Potential Parties in Interest against the Stone Point Searched Parties. Based solely on the foregoing search, Stretto has determined that neither the Trident VI Funds, Stone Point nor the Stone Point Searched Parties have been identified on the Potential Parties in Interest list in these Chapter 11 Cases as of the date hereof and to the best of its knowledge, that

6

there are no material connections that require disclosure.  To the extent Stretto learns of any material connections between Stone Point's funds or investments included in the above-described conflicts search and the Debtors, Stretto will promptly file a supplemental disclosure.  Stretto may have had, may currently have, or may in the future have business relationships unrelated to the Debtors with one or more Stone Point entities including, among others, portfolio companies of Stone Point.

13.     From time to time, Stretto partners or employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire a debt or equity security of many companies, one of which may be one of the Debtors or their affiliates, often without Stretto's or its personnel's knowledge.  Each Stretto partner or employee generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security.  Each Investment Fund is generally operated as a blind pool, meaning that when the Stretto partners or employees make an investment in the particular Investment Fund, he, she or they do not know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

14.     From time to time, Stretto partners or employees may personally directly acquire a debt or equity security of a company that may be one of the Debtors or their affiliates.  Stretto has a policy prohibiting its partners and employees from using confidential information that may come to their attention in the course of their work.  In this regard, subject to the foregoing, all Stretto partners and employees are barred from trading in securities with respect to matters in which Stretto is retained.  Subject to the foregoing, upon information and belief, and upon reasonable

7

inquiry through email survey of Stretto's employees, Stretto does not believe that any of its partners or employees own any debt or equity securities of a company that is a Debtor or of any of its affiliates.

15.     To the best of my knowledge, Stretto (a) does not hold or represent an interest adverse to the Debtors' estates; (b) is a "disinterested person" that (i) is not a creditor, an equity security holder, or an insider, (ii) is not and was not, within two years before the Petition Date, a director, officer, or employee of any of the Debtors, and (iii) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason; and (c) has disclosed all of Stretto's connections with the Debtors, its creditors, any other party in interest, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: June 3, 2024                    */s/ Sheryl Betance*
_____
Sheryl Betance
Senior Managing Director
Stretto, Inc.
410 Exchange, Ste. 100
Irvine, California 92602

8

**<u>EXHIBIT 1</u>**

**List of Potential Parties-in-Interest**

**Debtors**
CalAmp Corp.
CalAmp Wireless Networks Corporation
LoJack Global LLC
Synovia Solutions LLC

**Non-Debtor Affiliates**
Car Mart Mexico S.A. de C.V.
Car Mart Comunicaciones S.A. de C.V.
LoJack de Mexico, S.A. de C.V.
LoJack Espana S.A.
Boisen S.A.
LoJack Canada Enterprises ULC
LI Network Holding BV
LI VHF Solutions (SPV)
CalAmp Northstar Holdings, Inc.
CalAmp Wireless Networks Inc.
LoJack Netherlands BV
CalAmp Do Brasil Servicos Telematicos Ltda.
CalAmp Importacao e Lococao de
    Equipamentos Para Rastreamento Ltda.
CalAmp UK Ltd.
Tracker Network (UK) Limited
Jade Heaven Holdings Limited
CalAmp Japan KK
ThinxNet GmBH
Car Securities S.A.
LoJack Italia SRL
LoJack Network SRL

**Current and Former Directors and Officers**
Christopher R. Adams
Jikun Kim
Mark Gaydos
Carson Brennan
Maurizio Iperti
Ali Ghulamali
Henry Maier
Scott Arnold
Nathan Lowstuter
Kurtis Binder
Jason Cohenour
Roxanne Oulman

Jorge Titinger
Kirsten Wolberg
Wesley Cummins
Jeffery Gardener
Jill Frizzley

**Significant Equityholders**
B. Riley Asset Management, LLC
Aristotle Capital Boston, LLC
AIGH Capital Management, LLC
The Vanguard Group, Inc.
Paradigm Capital Management. Inc.
Royce Investment Partners
PENN Capital Management Company, Inc.

**Secured Lenders**
Lynrock Lake Master Fund LP
Lynrock Lake LP
The Bank of New York Mellon Trust Company, N.A.
JPMorgan Chase & Co
Jefferies Financial Group Inc
Truis Advisory Services Inc
Morgan Stanley & Co LLC

**Adverse Litigation Parties**
Jacques Daniel
Koninklijke Philips N.V.
The City of Edmonton Legal Services
Tantalum Innovations Limited
BillingPlatform Corp.
Mrs. E. Hunponu-Wusu

**Significant Creditors/Vendors/Contract Counterparties**
Airship Group, Inc
Alteryx, Inc
Amazon Business
Amazon Capital Services
American Express Travel
Aramark Refreshment Services, Inc
Arena, a PTC Business
Arin
Backupify, Inc  c/o Datto Inc
Bid Ocean, Inc.

BlueCosmo Satellite Communications
BusPlanner, Inc
Care I.T. Services
CCH INC. DBA WOLTERS KLUWER
CDW LLC
Cloud Monitored Objects Inc.
Computer Projects of Illinois Inc
Concord Worldwide, Inc.
Concur Technologies Inc
Cyxtera
Delighted, LLC
DHL Express USA, Inc.
Dimation
Docusign Inc.
Dun & Bradstreet
E Trade Corporate Services
Emkay Inc (Leasing)
enhanceHCM LLC
ESRI
Expeditores International
Expeditors International de Mexico
    SA De CV
Expeditors Int'l of Wa Inc.
Federal Express
FedEx -Freight
Fedex Freight West
FedEx Trade Networks Transport &
Brokerage,Inc
Freshworks Inc
Go Technology Management
GreatAmerica Financial Services Corp.
Greenshades Software
IBM Corporation
Icims Inc
Idera, Inc.
InsightSoftware, LLC
Intelligent Software Solutions Inc, Tizbi
Iron Mountain Records Management - US
Kaseya US Sales, Llc
LeanData, Inc
LeaseCalcs
Lightmetrics, Inc.
Lucid Software Inc.
Mainfreight Inc.
Mcmaster-Carr
Micro Precision Calibration
MobilTech Global Services

Moravia IT, LLC
National Law Enforcement
Telecommunications Systems Inc.
Opsgenie, Llc
Outreach Corporation
PagerDuty
Paypal, Inc
Pendo
PeopleNet Communications Corporation
Perdiemco LLC
Print-Scape Inc.
ProntoForms Inc d/b/a TrueContext Inc.
Proven Works Limited
Q2 Software, Inc.
Quadient Finance USA, Inc
Quench USA, Inc
ReadMe.io Co
RFPIO INC.
Siemens Industry Software Inc.
Skillsoft
Slashdot Media, LLC
Smartsheet, Inc.
SolarWinds North America, Inc.
Sonatype, Inc.
SPS Commerce, Inc.
Sunbelt Controls, Inc
Talend, Inc.
TeamViewer Germany GmbH
The Weather Company, LLC
Thomson Reuters - West
Tines Security Services Limited
Total Quality Logistics
Trace3
Trackunit, Inc.
Twilio, Inc

**Landlords**
Irvine Palm Court, LLC
Prairie City West, LLC
Carlsbad 2200, LLC
Equity Industrial Pequot, LLC

**Banks**
JPMorgan Chase
JPMorgan Asset Management
PNC Bank

3

**Utilities**

A.O.Reed & Co.
Acco Engineered Systems
AT&T
AvidBit
Bay Alarm
Center Point Energy
Century Link (90699662)
CenturyLink Communications, LLC
Charter Communications Holdings, LLC
China Telecom (Americas) Corporation
Coastside.Net, Inc.
Comcast
Dallas Main LP
Dial Security
Efax Corporate
Eversource Energy
Fireline Broadband
Fusion Cloud Company, LLC
GeoLinks
Glory Communications, Inc.
Granite Telecommunications
Gutierrez-Palmenberg, Inc.DBA Phoeniz Internet
Handi Commercial Cleaning Supply
Interior Plantscapes
j2 Cloud Services Inc
Landscape Maintenance Of America dba California Highway Adoption
McLean Mechanical Contractors, Inc
Metro Elevator, Inc.
OGE Electric Services
Ringcentral Inc.
Rise Broadband
San Diego Gas & Electric
Shasta Beam
Solid Property Services, Inc
Time Warner
Towerstream Corporation
unWired Broadband, Inc
Unwired LTD
Verizon
Waste Management Of Wi/Mn
Webperception, LLC

**Insurers/Brokers**

ACE American Insurance Company

Axis Insurance Company
Chubb Indemnity Insurance Company
Columbia Casualty Company
Continental Insurance Company
Crum & Forster Specialty Insurance Company
Federal Insurance Company
Indian Harbor Insurance Company
Lloyds of London
Lloyds of London – Falvey
National Union Fire Ins Co Pittsburgh, PA
Pacific Life Insurance Company
Vantage Risk Assurance Company
Woodruff Sawyer
XL Specialty Insurance Company

**Taxing Authorities**

Aiken County Treasurer, SC
Alabama Department of Revenue
Alachua County Tax Collector, FL
Alamance County Tax Collector, NC
Alameda County Tax Collector, CA
Alexander County Tax Office, NC
Amador County Tax Collector, CA
Arizona Department of Revenue
Arkansas Department of Finance & Administration
Ascension Parish Sheriff/Tax Collector, LA
Baldwin County, AL
Baldwin County Revenue Commissioner, AL
Barrow County Tas Commissioner, GA
Bartow County Tax Commissioner, GA
Beaufort County Tax Collector, NC
Bernalillo County Treasurer, NM
Bertie County Tax Collector, NC
Bexar County Tax Assessor-Collector, TX
Bladen County Revenue Administration, NC
Bridgeport City Tax Collector, CT
Brookfield City-Waukesha Treasurer, WI
Buncombe County Tax Collections, NC
Burke County Tax Collector, NC
Burleson County Tax Office, TX
Butler County Collector, MO
Butte County Tax Collector, CA
Cabarrus County Tax Collector, NC
Caddo Parish Sheriff's Office Tax Dept, LA
Calcasieu Parish Sheriff & Tax, LA
Caldwell County Tax Collector, NC

Calhoun County Revenue Commissioner, AL
California Department of Tax & Fee
  Administration
Calvert County Tax Collector, MD
Camden County Tax Collector, NC
Camden County Tax Commissioner, GA
Cameron County Tax Office, TX
Canada Revenue Agency
Canadian County Treasurer, OK
Carroll County, MD
Carteret County Tax Collector, NC
Caswell County Tax Collector, NC
Chatham County Tax Office, NC
Cherokee County Tax Collector, NC
Chesapeake City Treasurer, VA
Chesterfield County Treasurer, VA
City of Anniston, AL
City of Auburn, AL
City of Blue Ridge Tax Department, GA
City of Burlington Tax Collector, NC
City of Cedartown Tax Department, GA
City of Covington Tax Collector, TN
City of Donaldsonville Tax Collector, LA
City of Hamlet Tax Collector, NC
City of Henderson Treasurer, KY
City of Kingsland Tax Department, GA
City of Lafayette Tax Collector, LA
City of Lafayette Tax Department, GA
City of Lenoir Tax Collector, NC
City of Lumberton Tax Collector, NC
City of Marietta Tax Division, GA
City of Memphis Treasurer, TN
City of Morganton Tax Collector, NC
City of Murfreesboro City Tax
  Collector, TN
City of New Orleans Ad Valorem Tax,
  Department, LA
City of Oxford Tax Collector, MS
City of Raeford Tax Collector, NC
City of Shreveport Revenue Division, LA
City of Talladega, AL
City of Tuscaloosa, AL
City of Warner Robins, GA
City of Weaver, AL
City of Whiteville, NC
Clark County Tax Assessor, NV
Clark County Treasurer, WA

Clay County Tax Collector, FL
Cleveland County Tax Collector, NC
Coahoma County Tax Collector, MS
Cobb County Tax Commissioner, GA
Coconino County Treasurer, AZ
Colorado Department of Revenue
Comptroller of Maryland
Connecticut Department of Revenue Services
Contra Costa County Tax Collector, CA
Coventry Town, CT
Coweta County Tax Commissioner, GA
Craven County Tax Collector, NC
Cullman County & City, AL
Culpeper County Treasurer, VA
Cumberland County Tax Collection, NC
Cumberland County Tax Collector, VA
Custer County Treasurer, OK
Dallas County Tax Office Assessor-Collector,
  TX
Danbury City, CT
Daphne City, AL
Dare County Tax Collection, NC
Davidson County Metropolitan Trustee, TN
Davidson County Tax Collector, NC
Davie County Tax Office, NC
Dekalb County Revenue Dept., AL
Del Norte County Treasurer-Tax Collector, CA
Denver City
Directorate General of Public Finance
Doña Ana County Treasurer, NM
Douglas County Treasurer, NE
Durham County Tax Collector, NC
East Baton Rouge Parish Sheriff's Office, TX
Edgecombe County Tax Collector, NC
Fairfax County Dept. of Tax Admin., VA
Falls Church City Treasurer, VA
Fannin County Tax Commissioner, GA
Fauquier County Treasurer, VA
Florida Department of Revenue
Floyd County Sheriff, KY
Forsyth County Tax Collector, NC
Franchise Tax Board
Franklin County Tax Department, NC
Fresno County Tax Collector, CA
Fulton County Tax Commissioner, GA
Garland City Tax Office, TX
Garland ISD Tax Office, TX

Gaston County Tax Collector, NC

Gates County Tax Collector, NC
Georgia Department of Revenue
Germantown Town-Washington Treas., WI
Glastonbury Town Collector of Revenue, CT
Grant County Treasurer, WA
Grayson County Tax Assessor-Collector, TX
Greene County Tax Collector, AR
Greene County Tax Office, NC
Greene County Treasurer, VA
Guilford County Tax Department, NC
Halifax County Tax Collector, NC
Hampton City Treasurer, VA
Harnett County Tax Department, NC
Harris County Tax Assessor-Collector, TX
Hawaii Department of Taxation
Hays County Tax Office
Haywood County Tax Collections, NC
Hempstead County Tax Collector, AR
Henry County Tax Collector, NC
Hertford County Tax Collector, NC
Hickman County Trustee, TX
Hidalgo County Tax Assessor-Collector, TX
Hoke County Tax Collector, NC
Houston County Tax Commissioner, GA
HR Revenue & Customs
Humble ISD Tax Office, TX
Humboldt County Treasurer, NV
Hunt County Tax Assessor/Collector
Iberville Parish Tax Collector, LA
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Iredell County Tax Collector, NC
Isle of Wight County Treasurer, VA
Jackson County Collector, MO
Jackson County Collector, GA
Jasper County Treasurer, SC
Jefferson County Dept. of Revenue, AL
Jefferson County-Birmingham Tax
   Collector, AL
Johnston County Tax Office, NC
Kansas Department of Revenue
Kentucky Department of Revenue
Kern County KCTTC, CA

King County Treasurer, WA
King William County Treasurer, VA
Kitsap County Treasurer, WA
La Paz County Treasurer, AZ
Lafayette County Tax Collector, MS
Lafayette Parish Tax Collector, LA
Lafourche Parish Sheriff, TX
Lake County Treasurer, IN
Lamar County Tax Commissioner, GA
Lee County Tax Collector, NC
Lenoir County Tax Collector, NC
Lexington City Treasurer, VA
Lincoln County Treasurer, LA
Livingston Parish Sheriff's Office, LA
Los Alamos County Treasurer, NM
Los Angeles County Tax Collector, CA
Loudoun County Treasurer, VA
Louisiana Department of Revenue
Lowndes County Tax Collector, MS
Lowndes County Tax Commissioner, GA
Lubbock County Central Appraisal
   District, TX
Madison City-Dane Treasurer, WI
Madison County Tax Collector, AL
Marin County Tax Collector, CA
Marion County Treasurer, IN
Marlboro County Treasurer, SC
Martin County Tax Collector, NC
Massachusetts Department of Revenue
McLennan County Tax Office, TX
Mecklenburg County Tax Collector, NC
Merced County Tax Collector, FL
Miami-Dade County Tax Collector, FL
Michigan Department of Treasury
Minnesota Department of Revenue
Mississippi Department of Revenue
Missouri Department of Revenue
Mobile County Revenue Commissioner, AL
Monroe County Tax Collector, FL
Montana Department of Revenue
Montgomery County Rev. Commissioner, AL
Montgomery County Tax Collector, NC
Moore County Tax Department, NC
Multnomah County Tax Collector, OR
Nash County Tax Collector, NC
Nassau County Tax Collector, NC
Nebraska Department of Revenue

Netherlands Tax and Customs Administration

Nevada Department of Taxation
New Jersey Dept of the Treasury –
   Division of Taxation
New Madrid County Collector, FL
New Mexico Taxation and Revenue Dept.
New York State Dept. of Taxation and Finance
Newport News City Treasurer, VA
Norfolk City Treasurer, VA
North Carolina Department of Revenue
North Dakota Office of State Tax
   Commissioner
Northampton County Tax Collector, NC
Nye County Assessor, NV
Office of Diversity and Equal Opportunity
Ohio Department of Taxation
Oklahoma Tax Commission
Old Lyme Town Tax Collector, CT
Onslow County Tax Collector, NC
Orange County Treasurer- Tax Collector, CA
Orange County Tax Collector, NC
Palm Beach County Tax Collector, FL
Pamlico County Tax Collector, NC
Parkway UD Tax Office, TX
Pasadena ISD Tax Assessor-Collector, TX
Pasco County Tax Collector, FL
Pasquotank County Tax Collector, NC
Peach County Tax Commissioner, GA
Pender County Tax Collector, NC
Pennsylvania Department of Revenue
Pickens County Treasurer, SC
Pierce County Finance, WA
Pima County Treasurer, AZ
Pinal County Treasurer, AZ
Pitt County Tax Collector, NC
Polk County Tax Assessor-Collector, TX
Polk County Tax Commissioner, GA
Potter County Tax Assessor-Collector, TX
Prince William County Taxpayer Services, VA
Pulaski County Treasurer, AR
Randolph County Tax Collector, NC
Rankin County Tax Collector, MS
Rhode Island Dept. of Revenue – Division of
   Taxation
Richardson ISD Tax Office, TX
Richland County Treasurer, SC

Richmond County Tax Collector, NC
Rio Arriba County Treasurer, NM
Rio Grande City ISD Tax Assessor, TX
Robeson County Tax Collector
Rockbridge County Treasurer, VA
Rockdale County Tax Commissioner, GA
Rockingham County Tax Collector, NC
Rowan County Taxes, NC
Russell County Revenue Commissioner, AL
Rutherford County Trustee, TN
Rutherford County Revenue Department, NC
Salt Lake County Assessor-Personal Property
   Division, UT
Sampson County Tax Collector, NC
San Bernardino County Tax Collector, CA
San Diego County Tax Collector, CA
Santa Barbara County Treasurer-Tax Collector,
   CA
Santa Fe County Treasurer, NM
Scotland County Tax Department, NC
Shasta County Treasurer-Tax Collector
Shelby County Tax Collector, IN
Shelby County Trustee, TN
Sheldon ISD Tax Office, TX
Smith County Tax Office, TX
Snohomish County Treasurer, WA
Solano County Treasury, CA
South Africa Revenue Service
South Carolina Department of Revenue
South Windsor Town Tax Collector, CT
Spartanburg County Treasurer, SC
Spokane County Treasurer, WA
Spotsylvania County Treasurer, VA
St. Charles County Collector, MO
St. Louis County Collector of Revenue, MO
St. Lucie County Tax Collector, FL
St. Mary Parish Sheriff's Office, LA
St. Mary's County Treasurer, MD
Stamford City Tax Collector, CT
Stanislaus County Tax Collector, CA
Stanly County Tax Collector, NC
Starr County Tax Office, TX
State of Maryland
Stokes County Tax Collector, NC
Sumter County Treasurer, SC
Sunflower County Tax Collector, MS
Sussex County Treasurer, VA

Swain County Tax Office, NC
Tarrant County Tax Assessor-Collector, TX
Tennessee Department of Revenue
Terrebonne Parish Sheriff/Tax Collector, LA
Texas Comptroller
Thurston County Treasurer, WA
Tippecanoe County Treasurer, IN
Tipton County Trustee, TN
Tolland Town Tax Collector, CT
Town of Banks, AL
Town of Bryson City Tax Collector, NC
Town of Centerville City Recorder, TN
Town of Columbia Tax Collector, NC
Town of Culpeper Treasurer, VA
Town of Easton Tax Collector, MD
Town of Elizabethtown Tax Collector, NC
Town of Murphy Tax Collector, NC
Town of Nags Head Tax Collector, NC
Town of Nashville Tax Collector, NC
Town of Smithfield Treasurer, VA
Town of Tarboro Tax Collector, NC
Town of Troy Tax Collector, NC
Town of Warrenton Tax Collector, VA
Town of Waynesville Tax Collector, NC
Town of Williamston Tax Office, NC
Travis County Tax Office, TX
Troup County Tax Commissioner, GA
Tuscaloosa County Tax Collector, AL
Utah State Tax Commission
Valencia County Treasurer, NM
Vance County Tax Office, NC
Vanderburgh County Treasurer, IN
Ventura County Tax Collector, CA
Vermont Department of Taxes
Virginia Department of Taxation
Wake County Tas Administration, NC
Walton County Tax Collector, FL
Ware County Tax Commissioner, GA
Washington County Tax Collector, MS
Washington County Tax Collector, OR
Washington Department of Revenue
Washoe County Treasurer, NV
Watauga County Tax Administrator, NC
Wayne County Tax Assessor/Collector, MS
Wayne County Tax Collector, NC
Whatcom County Treasurer, WA
Williamson County Trustee, TX

Wilson County Trustee, TN
Wilson County Tax Collector, NC
Wisconsin Department of Revenue
Wolcott Town Tax Collector, CT
Wyoming Department of Revenue
Yavapai County Treasurer, AZ
Yuma County Treasurer, AZ

**Debtor's Professionals (including
Ordinary Course Professionals)**
Bradley Arant Boult Cummings LLP
Potter Anderson & Corroon LLP
Oppenheimer & Co. Inc.
Stretto Inc.

**Other Parties' Professionals**
Pashman Stein Walder Hayden P.C.
Akin Gump Strauss Hauer & Feld LLP

**Supplier or Party**
Flextronics International Europe BV
Plexus Manufacturing Solutions
Celestica Electronics, Aggregate
Ingram Micro Brasil
Plexus (Thailand) Co., LTD
Evercom International Limited
Wistron Neweb Corporation
Queclink Wireless Solutions (HK) Co. Ltd.
Amazon Web Services, Inc.
Cigna
Iridium Satellite LLC
Deloitte & Touche LLP
Marketstar QOZ Business LLC
Bristlecone Incorporated
Demandbase, Inc
Gartner, Inc.
Linkedin
Pequot 161 Ventures LLC
Carlsbad 2200 LLC
Kibernum USA, LLC
Latham & Watkins LLP
2400 Glenville LLC
Taylor Wessing
ZRG Partners, LLC
System Loco Ltd.
Corporate Visions, Inc.
UPS Supply Chain Solutions Inc

Emmet, Marvin & Martin, LLP
Taoglas Limited
American Tower
Demarest Advogados
Capgemini Engineering Act
Conga
Pinnacle Towers LLC
CSC
GPS City
Broseta Abogados
The Standard Life Insurance Co. of New York
Trinamix Inc.

Rosa Sierra-Fox
Elizabeth Thomas
Dion Wynn

**Bankruptcy Judges (District of Delaware)**
Chief Judge Laurie Selber Silverstein
Judge John T. Dorsey
Judge Craig T. Goldblatt
Judge Thomas M. Horan
Judge Karen B. Owens
Judge Brendan L. Shannon
Judge J. Kate Stickles
Judge Mary F. Walrath

**Staff of Office of the United States Trustee, Region 3**
Lauren Attix
Malcom M. Bates
Fang Bu
Linda Casey
Joseph Cudia
Holly Dice
Shakima L. Dortch
Timothy J. Fox, Jr.
Diane Giordano
Michael Girello
Christine Green
Benjamin Hackman
Nyanquoi Jones
Jane Leamy
Jonathan Lipshie
Hannah M. McCollum
Joseph McMahon
Jonathan Nyaku
James R. O'Malley
Linda Richenderfer
Richard Schepacarter
Edith A. Serrano

9

**EXHIBIT 2**

Alabama Department of Revenue
Amazon Capital Service Inc.
Amazon Web Services Inc.
American Express
Arizona Department of Revenue
AT&T
Caddo Parish
Calcasieu Parish
California Department of Tax
Cigna Healthcare
City and County of Denver
Colorado Department of Revenue
Comcast
Comptroller of Maryland
CSC
Cyxtera Communications LLC
Dun & Bradstreet, Inc.
Expeditors International
Federal Express
FedEx
FedEx Freight, Inc.
Florida Department of Revenue
Georgia Department of Revenue
Granite Telecommunications LLC
IBM Corp.
Idaho State Tax Commission
Illinois Department of Revenue
Indiana Department of Revenue
Iowa Department of Revenue
Iron Mountain
J.P. Morgan Chase & Co.
Kansas Department of Revenue
Kentucky Department of Revenue
Louisiana Department of Revenue and Taxation
Massachusetts Department of Revenue
Minnesota Revenue
Mississippi Department Of Revenue
Missouri Department of Revenue
Nebraska Department of Revenue
Nevada Department of Taxation
New Mexico Taxation and Revenue Department

New York State Department of Taxation and Finance
NJ Division of Taxation
North Carolina Department of Revenue
Ohio Department of Taxation
Pennsylvania Department of Revenue
South Carolina Department of Revenue
SPS Commerce Inc
Talend Inc.
Tennessee Department of Revenue
Texas Comptroller of Public Accounts
Time Warner Cable
Utah State Tax Commission
Verizon
Virginia Department of Taxation
Washington Department of Revenue
Wisconsin Department of Revenue