**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CalAmp Corp., *et al.*,[1] | Case No. 24-11136 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 17 & 124** |

**MEMORANDUM OF LAW IN SUPPORT OF AN ORDER (I) APPROVING
THE ADEQUACY OF THE DISCLOSURE STATEMENT AND (II) CONFIRMING
THE AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF
REORGANIZATION OF CALAMP CORP. AND ITS DEBTOR AFFILIATES
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: July 9, 2024

L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
Gregory J. Flasser (No. 6154)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192

*Counsel to the Debtors
and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: CalAmp Corp. (7070); CalAmp Wireless Networks Corporation (1740); LoJack Global LLC (4794); and Synovia Solutions LLC (2994).  The Debtors' service address is 15635 Alton Parkway, Suite 250, Irvine, CA 92618.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND ....................................................................................................3

    I.    Chapter 11 Cases.........................................................................................3

    II.    Solicitation of Votes on the Plan and Noticing............................................5

    III.    Combined Hearing Notice ...........................................................................6

    IV.    Objections to Approval of the Disclosure Statement and Confirmation of the Plan are Resolved and the Plan is Fully Consensual ....................................7

ARGUMENT .........................................................................................................8

    I.    Approval of the Disclosure Statement and Solicitation.................................8

        A.    The Disclosure Statement Should Be Approved ................................8

        B.    The Debtors Solicited in Compliance with the Solicitation Procedures..........10

            1.    The Prepetition Solicitation of Votes Satisfies Sections 1125(g) and 1126(b) of the Bankruptcy Code....................................10

            2.    The Debtors Complied with the Solicitation Procedures....................11

    II.    The Plan Modifications Should Be Permitted Without Further Solicitation ...............12

    III.    The Plan Satisfies the Requirements for Confirmation Under Section 1129 of the Bankruptcy Code.........................................................................12

        A.    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code .....................13

            1.    The Plan's Classification of Claims and Equity Interests Satisfies Section 1122 of the Bankruptcy Code...................................13

            2.    The Plan Satisfies Section 1123(a) of the Bankruptcy Code..............14

            3.    The Plan Satisfies Section 1123(b)(1) of the Bankruptcy Code ..........15

            4.    The Plan Satisfies Section 1123(b)(2) of the Bankruptcy Code ..........16

        B.    The Releases, Exculpation and Injunction Provisions Should Be Approved.........................................17

1.      The Debtor Release Is Appropriate and Should Be Approved ............18

2.      The Third Party Release Is Consensual and Should Be Approved..............................................................................................22

3.      The Exculpation Provision Is Appropriate and Should Be Approved..............................................................................................25

4.      The Injunction Provision Is Appropriate ............................................27

C.      The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code .....................28

D.      The Plan Satisfies Section 1129(a)(3) of the Bankruptcy Code .....................29

E.      The Plan Satisfies Section 1129(a)(4) of the Bankruptcy Code .....................30

F.      The Plan Satisfies Section 1129(a)(5) of the Bankruptcy Code .....................31

G.      Section 1129(a)(6) of the Bankruptcy Code is Inapplicable to the Plan..........32

H.      The Plan Satisfies Section 1129(a)(7) of the Bankruptcy Code .....................32

I.      The Plan Does Not Satisfy Section 1129(a)(8) of the Bankruptcy Code but May Still Be Confirmed Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.....................................................................35

J.      The Plan Satisfies Section 1129(a)(9) of the Bankruptcy Code .....................35

K.      The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code ...................36

L.      The Plan Satisfies Section 1129(a)(11) of the Bankruptcy Code ...................36

M.      The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code ..........38

N.      Section 1129(a)(13) of the Bankruptcy Code is Satisfied ..............................39

O.      The Plan Satisfies "Cramdown" Requirements Under Section 1129(b) of the Bankruptcy Code .....................................................................................39

1.      The Plan Does Not Discriminate Unfairly...........................................40

2.      The Plan Is Fair and Equitable.............................................................41

P.      The Plan Satisfies Section 1129(c) of the Bankruptcy Code...........................43

Q.      The Plan Satisfies Section 1129(d) of the Bankruptcy Code...........................43

R.      Section 1129(e) of the Bankruptcy Code Is Inapplicable to the Plan .............43

2

IV.    Cause Exists to Waive the Stay of the Confirmation Order .........................................43

CONCLUSION.....................................................................................................................45

3

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re 203 N. LaSalle St. Ltd. P'ship.*,
  190 B.R. 567 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999)............40

*In re Affiliated Foods, Inc.*,
  249 B.R. 770 (Bankr. W.D. Mo. 2000).................................................................................33

*In re Aleris*,
  No. 09–10478 (BLS), 2010 WL 3492664 .............................................................................19

*In re Alpha Ent. LLC*,
  No. 20-10940 (LSS) (Bankr. D. Del. Dec. 12, 2020) ...........................................................23

*In re Alpha Latam Mgmt., LLC*,
  No. 21-11109 (JKS) (Bankr. D. Del.)....................................................................................23

*Azar v. THGH Liquidating LLC (In re THGH Liquidating LLC)*,
  2020 WL 5409002 (D. Del. Sept. 9, 2020)............................................................................29

*Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*,
  526 U.S. 434 (1999).........................................................................................................32, 42

*In re Chemtura Corp.*,
  439 B.R. 561 (Bankr. S.D.N.Y. 2010)...................................................................................42

*In re Clovis Oncology, Inc.*,
  No. 22-11292(JKS) (Bankr. D. Del.).....................................................................................23

*In re Coastal Broad. Sys., Inc.*,
  570 F. App'x 188 (3d Cir. 2014) ...........................................................................................13

*In re Coram Healthcare Corp.*,
  315 B.R. .................................................................................................................................20

*In re David's Bridal, Inc.*,
  Case No. 18-12635 (LSS) (Bankr. D. Del. Jan. 4, 2019).......................................................23

*In re Drexel Burnham Lambert Grp., Inc*,
  960 F.2d 285 (2d Cir. 1992).............................................................................................28, 33

*In re Elk Petroleum, Inc.*,
  No. 19-11157 (LSS) (Bankr. D. Del. July 24, 2020).............................................................23

*In re EV Energy Partners, L.P.*,
   No. 18-10814 (CSS) (Bankr. D. Del. May 16, 2018) ............................................................24

*In re Exide Techs.*,
   303 B.R. ............................................................................................................................40

*In re Gibson Brands*,
   No. 18-11025 (CSS) (Bankr. D. Del.) ...............................................................................24

*In re Glob. Safety Textiles Holdings LLC*,
   No. 09-12234 (KG), 2009 WL 6825278 (Bankr. D. Del. Nov. 30, 2009)..............................12

*In re GUE Liquidation Co.*,
   LLC, No. 19-11240 (LSS) (Bankr. D. Del. Dec. 19, 2019).....................................................23

*Harrington v. Purdue Pharma L.P.*,
   2024 WL 3187799 (2024)....................................................................................................22

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ..........................................................................19, 26, 37

*In re Ion Media Networks, Inc.*,
   419 B.R. 585 (Bankr. S.D.N.Y. 2009) .................................................................................41

*In re Jersey City Med. Ctr.*,
   817 F.2d 1055 (3d Cir. 1987)...............................................................................................13

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
   987 F.2d 154 (3d Cir. 1993).................................................................................................13

*In re Legacy Ejy, Inc.*,
   No. 22-105800 (JKS) (Bankr. D. Del.) .................................................................................23

*In re Legacy FSRD*,
   No. 22-11051 (JKS) (Bankr. D. Del.) ...................................................................................23

*In re Melinta Therapeutics, Inc.*,
   No. 19-12748 (LSS) (Bankr. D. Del. Apr. 11, 2020) .......................................................23, 27

*In re Paragon Offshore PLC*,
   2016 WL 6699318 (CSS) (Bankr. D. Del. Nov. 15, 2016)......................................................37

*In re PPI Enters. (U.S.), Inc.*,
   228 B.R. 339 (Bankr. D. Del. 1998) .....................................................................................29

*In re PWS Holding Corp.*,
   228 F.3d 224 (3d Cir. 2000).................................................................................................26

5

*In re Sound Radio, Inc.*,
   93 B.R. 849 (Bankr. D.N.J. 1988) .................................................................29, 37

*In re Triangle Petroleum Corp.*,
   No. 19-11025 (MFW) (Bankr. D. Del. June 14, 2019) [Docket No. 71].................................24

*In re Tribune Co.*,
   464 B.R. 126 (Bankr. D. Del. 2011) .................................................................19, 36

*U.S. Bank Nat'l Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.)*,
   426 B.R. 114 (Bankr. D. Del. 2010) .................................................................19

*United States v. Energy Res. Co.*,
   495 U.S. 545 (1990).................................................................................36

*W. Mining & Invs., LLC v. Bankers Trust Co.*,
   2003 WL 503403 (D. Del. Feb. 19, 2003) .................................................................26

*In re W.R. Grace & Co.*,
   446 B.R. 96 (Bankr. D. Del. 2011) .................................................................26

*In re W.R. Grace & Co.*,
   475 B.R. 34 (Bankr. D. Del. 2012), *aff'd sub nom. In re W.R. Grace & Co.*, 729 F.3d 332 (3d Cir. 2013) .................................................................12, 37

*In re Washington Mut., Inc.*,
   442 B.R. 314 (Bankr. D. Del. 2011) .................................................................19

*In re Z Gallerie, LLC*,
   No. 19-10488 (LSS) (Bankr. D. Del.).................................................................22

*In re Zenith Electronics Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) .................................................................20, 29

## STATUTES

11 U.S.C. § 365.................................................................................16

11 U.S.C. § 507.................................................................................14, 38

11 U.S.C. § 524.................................................................................26

11 U.S.C. § 1114.................................................................................39

11 U.S.C. § 1122.................................................................................13, 14

11 U.S.C. § 1123................................................................. 14-17, 19, 20

11 U.S.C. § 1125 ........................................................................................8, 10, 28, 45

11 U.S.C. § 1126 ........................................................................................5, 10, 33, 34, 39

11 U.S.C. § 1127 ........................................................................................10, 12

11 U.S.C. § 1129 ........................................................ 12, 13, 28-36, 38, 39, 41, 42, 43, 45

28 U.S.C. § 1930 ........................................................................................38

§ 5 of the SECURITIES ACT OF 1933 ........................................................................43

## OTHER AUTHORITIES

FED. R. BANKR. P. 1015 ........................................................................................3

FED. R. BANKR. P. 3016 ........................................................................................9

FED. R. BANKR. P. 3017 ........................................................................................10, 11, 28

FED. R. BANKR. P. 3018 ........................................................................................10, 11, 28

FED. R. BANKR. P. 3019 ........................................................................................12

FED. R. BANKR. P. 3020 ........................................................................................43

FED. R. BANKR. P. 9019 ........................................................................................20

DEL. BANKR. L.R. 2016-2 ........................................................................................30

H.R. Rep. No. 95-595 (1977) ........................................................................................13, 28

S. Rep. No. 95-989 (1978) ........................................................................................13

The debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases") submit this memorandum of law (the "Confirmation Brief") in support of the request for entry of an order (the "Confirmation Order") (a) approving the *Disclosure Statement for the Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 17] (the "Disclosure Statement"), and (b) confirming the *Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 124-1] (as amended, modified, or supplemented from time to time, the "Plan").[2]  In support of approval of the Disclosure Statement and confirmation of the Plan, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.      The Debtors are seeking approval of the Plan and Disclosure Statement and entry of the Confirmation Order with the support of their key stakeholders, including the Consenting Lenders who hold 100% of the Secured Term Loan Claims in Class 3 and 99.63% of the Secured Note Claims in Class 4, which amounts to nearly $275 million in secured claims against the Debtors.  The Plan, which is substantially consistent with the terms of the RSA, has been accepted by 100% of the Class 3 Claims, which is the only class entitled to vote.

2.      The Plan maximizes the value of the Debtors, is in the best interest of all of their stakeholders, and is the result of arms'-length, good-faith negotiations between the Debtors and the Required Consenting Lenders.  The Plan will significantly deleverage the Debtors' balance

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Plan, Confirmation Order, Kim Declaration (as defined herein), Voting Declaration (as defined herein), Scroggins Declaration (as defined herein), or Frizzley Declaration (as defined herein), as applicable.

sheet, including the elimination of $230 million in funded debt, which will position the Reorganized Debtors for post-emergence success.  Additionally, the Reorganized Debtors will be a private company on emergence, saving millions of dollars in go-forward legal fees and expenses. Most importantly, under the Plan, the Debtors will render all Allowed Claims of their employees, vendors and all other general unsecured creditors unimpaired.  Finally, the Restructuring Transactions contemplated by the Plan include amending the Secured Term Loan Credit Agreement to reduce the interest rate and extend the maturity date, which will preserve liquidity and ensure better cash flow going forward.  In short, the Plan protects the Debtors' most vulnerable stakeholders while maximizing recoveries for holders of funded debt.

3.      Since the filing of the Plan, the Debtors have worked cooperatively with all parties who have reached out with informal comments and those that have filed formal objections, including the Securities and Exchange Commission and the Office of the United States Trustee. Through those efforts, ***the Debtors have resolved all informal comments and formal objections*** through revisions to the Plan, as reflected in the blackline attached as <u>Exhibit B</u> to the *Notice of Filing of Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 124], and certain resolutions incorporated into the proposed Confirmation Order.

4.      The Plan***, which is fully consensual***, is in the best interests of all the Debtors' stakeholders as it maximizes the value of the Debtors' Estates for the benefit of all stakeholders and allows the Debtors to emerge from chapter 11 with a right-sized capital structure to ensure go-forward success.  For the reasons herein and in the Confirmation Declarations, the Disclosure Statement satisfies the requirements of section 1125 of the Bankruptcy Code, and the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  Accordingly, the Debtors respectfully

2

request that the Court enter the Confirmation Order approving the Disclosure Statement and confirming the Plan.

## BACKGROUND

### I.    Chapter 11 Cases

5.    On June 3, 2024 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed in these Chapter 11 Cases.

6.    For an overview of the Debtors' business and other facts relevant to the relief discussed herein, the Debtors respectfully refer the Court to the record of the Chapter 11 Cases, including:

    a.    the Disclosure Statement;

    b.    the Plan;

    c.    the *Declaration of Jikun Kim in Support of the Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 15];

    d.    the *Final Order (I) Authorizing Limited Use of Cash Collateral; (II) Granting Adequate Protection Liens and Superpriority Administrative Expense Claims to Prepetition Secured Parties; (III) Modifying the Automatic Stay; and (IV) Granting Related Relief* [Docket No. 105] (the "Final Cash Collateral Order");

    e.    the *Debtors' Motion for Entry of an Order (I) Scheduling a Combined Hearing on Adequacy of Disclosure Statement Confirmation of Prepackaged Plan; (II) Establishing the Plan and Disclosure Statement Objection Deadlines and Related Procedures, (III) Approving the Solicitation Procedures and Form of Ballot; (IV) Directing that a Meeting of Creditors not be Convened; (V) Waiving the Requirement of Filing*

3

*Statements of Financial Affairs and Schedules of Assets and Liabilities; and (VI) Granting Related Relief* [Docket No. 14] (the "Scheduling Motion");

f.    the *Order (I) Scheduling a Combined Hearing on Adequacy of Disclosure Statement Confirmation of Prepackaged Plan; (II) Establishing the Plan and Disclosure Statement Objection Deadlines and Related Procedures, (III) Approving the Solicitation Procedures and Form of Ballot; (IV) Directing that a Meeting of Creditors not be Convened; (V) Waiving the Requirement of Filing Statements of Financial Affairs and Schedules of Assets and Liabilities; and (VI) Granting Related Relief* [Docket No. 39] (the "Scheduling Order");

g.    the *Notice of (I) Commencement of Prepackaged Chapter 11 Bankruptcy Cases, (II) Combined Hearing on the Disclosure Statement, Confirmation of the Joint Prepackaged Chapter 11 Plan, and Related Matters, and (III) Related Objection and Briefing Deadlines* [Docket No. 45] (the "Combined Notice");

h.    the *Notice of Filing of Plan Supplement for the Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 109] (together with all amendments, supplements, or modifications, the "Plan Supplement");

i.    the *Declaration of Jung W. Song Regarding the Solicitation of Votes and Tabulation of Ballots Cast on, and Elections to Opt Out of the Third Party Release of, the Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 120] (the "Voting Declaration");

j.    the *Declaration of Jikun Kim, Chief Financial Officer of the Debtors, in Support of (I) Approval of the Disclosure Statement and (II) Confirmation of the Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed substantially contemporaneously herewith [Docket No. 121] (the "Kim Declaration");

k.    the *Declaration of Eric Scroggins in Support of Confirmation of the Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, filed substantially contemporaneously herewith [Docket No. 119] (the "Scroggins Declaration");

l.    the *Declaration of Jill Frizzley in Support of Confirmation of the Amended Joint Prepackaged Chapter 11 Plan of Reorganization of CalAmp Corp.*

4

*and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 122] (the "<u>Frizzley Declaration</u>" and together with Voting Declaration, the Kim Declaration, and the Scroggins Declaration, the "<u>Confirmation Declarations</u>"); and

m.      the various affidavits and declarations of service, mailing, and publication related to the foregoing (including, without limitation, the Solicitation Affidavit [Docket No. 61], the Publication Affidavit [Docket No. 66], and the Notice of Commencement Affidavit [Docket No. 61]).

7.      The Debtors incorporate by reference the foregoing documents and any testimony and other declarations that may be adduced or submitted at or in connection with the Combined Hearing (as defined below).

## II.      Solicitation of Votes on the Plan and Noticing

8.      On June 2, 2024, the Debtors commenced the prepetition solicitation of votes on the Plan (the "<u>Solicitation</u>") from the sole Holder of Claims in Class 3 (Secured Term Loan Claims), (such class, the "<u>Voting Class</u>") in accordance with the procedures for solicitation and tabulation of votes outlined in the Disclosure Statement and Scheduling Motion (the "<u>Solicitation Procedures</u>") and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law by causing Stretto, Inc. ("<u>Stretto</u>" or the "<u>Claims, Noticing, and Solicitation Agent</u>") to distribute copies of the Plan, the Disclosure Statement, and appropriate Ballot (the "<u>Solicitation Package</u>") to the member in the Voting Class by email with instructions to return the Class 3 Ballot on or prior to June 2, 2024 at 11:59 p.m. (prevailing Eastern Time). *See* Voting Declaration, ¶¶ 7-11.

9.      The tabulation of the properly executed and timely received Class 3 Ballot showed that the Voting Class unanimously voted to accept the Plan. *See id.* ¶ 18.

10.     As permitted by the Scheduling Order, the Debtors did not cause Stretto to serve Solicitation Packages on Holders of Claims or Equity Interests that were Unimpaired or Impaired

5

and deemed to either accept or reject the Plan (together, the "Non-Voting Classes"), pursuant to section 1126(f) of the Bankruptcy Code.  Instead, such Holders in these Non-Voting Classes received the Combined Notice and the Notice of Non-Voting Status.  Additionally, Holders of Allowed Class 8 Equity Interests and Section 510(b) Claims received the Class 8 Opt-Out Form as well.  *See id.* ¶¶ 12-14.

11.     On June 28, 2024, the Debtors filed the Plan Supplement.  The Plan Supplement consists of (a) the identity of the known members of the Reorganized Board; (b) the Amended Secured Term Loan Credit Documents; (c) a Schedule of Retained Causes of Action; (d) a Schedule of Rejected Executory Contract and Unexpired Leases Schedule; and (e) the New Corporate Governance Documents.

12.     On July 9, 2024, the Debtors filed the amended Plan, which attaches as an exhibit a blackline version of the Plan that illustrates for the convenience of the Court and all parties in interest, certain modifications to the Plan as originally filed.  Paragraph 27 below summarizes the modifications of the Plan.

### III.     Combined Hearing Notice

13.     As set forth in the Scheduling Order, the Court scheduled the combined hearing on the adequacy of the Disclosure Statement and confirmation of the Plan for July 11, 2024, at 9:30 a.m. (Prevailing Eastern Time) (the "Combined Hearing").  On June 5, 2024, the Debtors, in accordance with the Scheduling Order, caused the Notice and Claims Agent to serve the Combined Hearing Notice on (a) all known creditors and equity security holders, (b) the U.S. Trustee, and (c) all other parties entitled to notice in the Chapter 11 Cases.  *See* Notice of Commencement Affidavit.  In addition, on June 13, 2024, the Debtors caused the publication of

6

the Combined Notice setting forth the date and time set for the Combined Hearing in the national edition of *USA Today*, as evidenced by the Publication Affidavit.

14.    The Combined Hearing Notice provided, among other things (a) notice that the Debtors have filed voluntary petitions for relief under the Bankruptcy Code, (b) notice of the Combined Hearing to consider the adequacy of the information contained in the Disclosure Statement and confirmation of the Plan, (c) instructions for obtaining copies of the Disclosure Statement and Plan, (d) notice of the objection deadline and procedures for filing objections to the adequacy of the Disclosure Statement and confirmation of the Plan, and (e) a summary of the Plan. The Debtors have made, among other things, the Combined Hearing Notice, Notice of Commencement, the Disclosure Statement, and the Plan available at no cost on the Claims, Noticing, and Solicitation Agent's website at https://cases.stretto.com/calamp.    *See* Voting Declaration ¶ 14.

### IV.    Objections to Approval of the Disclosure Statement and Confirmation of the Plan are Resolved and the Plan is Fully Consensual

15.    Pursuant to the Scheduling Order, the deadline to file objections to approval of the Disclosure Statement and Confirmation of the Plan was July 5, 2024 at 4:00 p.m. (prevailing Eastern Time) (as may have been extended for certain parties, the "Objection Deadline").    No parties objected to approval of the Disclosure Statement (informal or otherwise).    As of the Objection Deadline, the Debtors received two formal objections with respect to confirmation of the Plan as follows:

- The U.S. Securities and Exchange Commission (the "SEC") objects to the Third Party Release as it relates to shareholders (the "SEC Objection") [Docket No. 113].

- The U.S. Trustee objects to the (i) Third Party Release as it relates to shareholders, (ii) imposition of releases over certain Related Parties; and

7

(iii) automatic disallowance and expungement of certain proofs of claim (the "<u>U.S. Trustee Objection</u>" and together with the SEC Objection, the "<u>Objections</u>") [Docket No. 116].

16.     As amended, the Debtors excised the Third Party Release as it relates to Holders of Class 8 Equity Interests and made other changes to the Plan to resolve the Objections, such as (i) limiting the application of releases to Related Parties and (ii) including additional language clarifying that the disallowance of Proofs of Claim is for administrative purposes only and will not impact the rights of parties that asserted such claims except to the extent such claims are governed by Sections 5.4 and 5.5 of the Plan.  The Debtors have also worked with various other parties to address their respective informal comments and have resolved all other responses by revisions to the Plan and proposed Confirmation Order.  Accordingly, the Plan is fully consensual, and the Debtors respectfully request entry of the Confirmation Order.

## **ARGUMENT**

### I.     **Approval of the Disclosure Statement and Solicitation**

#### A.  **The Disclosure Statement Should Be Approved**

17.     The Disclosure Statement contains "adequate information" regarding the Plan required by section 1125 of the Bankruptcy Code, and there have been no objections to its approval. For the reasons set forth below, the Debtors respectfully request that it be approved.

18.     Section 1125 of the Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

8

11 U.S.C. § 1125(a)(1).  The Disclosure Statement is detailed and comprehensive, and satisfies the elements of section 1125 of the Bankruptcy Code.  The Disclosure Statement contains historical information about the Debtors' businesses and detailed financial information, together with further explanations or summaries of the (i) company's business and capital structure; (ii) circumstances leading to the commencement of the Chapter 11 Cases, (iii) development of the RSA and Plan, (iv) the Plan and transactions to be consummated pursuant thereto, (v) certain financial information about the Debtors, including the Liquidation Analysis of the Debtors, attached as Exhibit C to the Disclosure Statement, a discussion of the valuation of the Reorganized Debtors in the Valuation Analysis attached as Exhibit D to the Disclosure Statement, and the Financial Projections attached as Exhibit E to the Disclosure Statement, (vi) voting procedures and requirements, (vii) means for implementing the Plan, (viii) treatment of executory contracts and unexpired leases, (ix) effect of Plan confirmation, including the discharge provision, Debtor Release, Third Party Release, Exculpation Provision, and Injunction Provision, (x) risk factors affecting the Plan, and (xi) important securities law and federal tax law disclosures and consequences of the Plan.  *See* Kim Declaration ¶ 9.  Further, the Disclosure Statement provides sufficient notice and information regarding the discharge, release, injunction, and exculpation provisions of the Plan.  Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  The language in section 9.4 of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, and such language is in bold capital font, making it conspicuous to any reader.  Thus, the Disclosure Statement satisfies Bankruptcy Rule 3016(c).

9

## B. The Debtors Solicited in Compliance with the Solicitation Procedures[3]

19.     The Debtors solicited the Plan in compliance with the Solicitation Procedures and the Scheduling Order and submit that (i) sections 1125(g) and 1126(b) of the Bankruptcy Code and (ii) Bankruptcy Rules 3017(d) and (e) and 3018(b) and (c) have been fully satisfied.

### 1. The Prepetition Solicitation of Votes Satisfies Sections 1125(g) and 1126(b) of the Bankruptcy Code

20.     Sections 1125(g) and 1126(b) of the Bankruptcy Code govern the acceptance of a plan of reorganization by a holder of a claim or equity interest prior to the commencement of a chapter 11 case.  Section 1125(g) provides in relevant part: "[A]n acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law."  11 U.S.C. § 1125(g).  The Debtors solicited Holders before the commencement of the Chapter 11 Cases in a manner that complies with nonbankruptcy law, satisfying section 1125(g).

21.     Pursuant to section 1126(b), a holder of a claim or interest that has accepted or rejected a plan prepetition is deemed to have accepted or rejected the plan if:

(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; or

(2) if there is not any such law, rule or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

11 U.S.C. § 1126(b).

---

[3] The Solicitation Procedures were previously approved pursuant to the Scheduling Order and the Debtors believe no further relief is required.

22.     Consistent with the Plan and Solicitation thereof, the Debtors respectfully submit that the Solicitation complies with sections 1125(g) and 1126(b) of the Bankruptcy Code and should be approved.

### 2. The Debtors Complied with the Solicitation Procedures

#### (a) Solicitation Package

23.     As required by Bankruptcy Rule 3017(d), the Debtors caused the Claims, Noticing, and Solicitation Agent to distribute on June 2, 2024, copies of the Solicitation Package, in accordance with the procedures approved by the Scheduling Order.  *See* Voting Declaration ¶¶ 7-14.  The Voting Class properly submitted the Ballot prior to the Voting Deadline.  *Id*. at ¶¶ 15-16.  Accordingly, the Solicitation Package satisfies Bankruptcy Rules 3017(d) and 3018(c).

#### (b) Ballot

24.     The Voting Class received, executed, and properly returned a Ballot in a form and manner approved under the Scheduling Order prior to the Voting Deadline.  As set forth in the Voting Declaration, the Claims, Noticing, and Solicitation Agent utilized appropriate procedures for processing and tabulating the returned Ballot.  *See* Voting Declaration ¶¶ 15-16.

#### (c) Opt-Out Form

25.     The Debtors complied with the Solicitation Procedures and the Scheduling Order by causing the Class 8 Opt-Out Form to be served on all Holders of Allowed Class 8 Equity Interests and Section 510(b) Claims.  *See id.* ¶¶ 12-14.[4]

---

[4] Notwithstanding the foregoing, in response to the Objections, the Debtors excised the Third Party Release with respect to Holders of Equity Interests in Class 8.

11

## II.    The Plan Modifications Should Be Permitted Without Further Solicitation

26.    Section 1127(a) of the Bankruptcy Code provides that a plan proponent may modify its plan at any time before confirmation so long as such modified plan meets the requirements of sections 1122 and 1123 of the Bankruptcy Code. *See* 11 U.S.C. § 1127(a). Bankruptcy Rule 3019 provides that modifications after a plan has been accepted will be deemed accepted by all creditors and equity security holders who previously accepted the plan, if the court finds that the proposed modifications do not adversely affect or change the treatment of the claim of any creditor or interest of any equity security holder. *See* Fed. R. Bankr. P. 3019(a). Courts interpreting Bankruptcy Rule 3019 have held that a proposed modification to a previously accepted plan will be deemed accepted if such modification is not material and does not adversely affect the way creditors and stakeholders are treated. *See, e.g.*, *In re Glob. Safety Textiles Holdings LLC*, No. 09-12234 (KG), 2009 WL 6825278, at *4 (Bankr. D. Del. Nov. 30, 2009).

27.    The Debtors made certain changes to the Plan as originally filed, including, among other things, clarifying certain Plan provisions, and making certain modifications requested to address objections received, including from, among others, the U.S. Trustee, the SEC, the Indenture Trustee, and the Required Consenting Lenders. Here, the Required Consenting Lenders were the only parties entitled to vote on the Plan, and they have consented to the Plan changes, which are largely clarifying or have the consent of each affected party. As discussed below, the Plan, as amended, continues to comply with the requirements of sections 1122 and 1123 of the Bankruptcy Code. Accordingly, no further solicitation is required.

## III.    The Plan Satisfies the Requirements for Confirmation Under Section 1129 of the Bankruptcy Code

28.    For the Plan to be confirmed, the Debtors must "show by a preponderance of the evidence that a reorganization plan is feasible." *See, e.g.*, *In re W.R. Grace & Co.*, 475 B.R. 34,

109-10 (Bankr. D. Del. 2012), *aff'd sub nom. In re W.R. Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).

The Debtors respectfully submit that the Plan should be confirmed because it satisfies each of the

applicable provisions of section 1129 of the Bankruptcy Code.

### A. The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code

29.     Pursuant to section 1129(a)(1) of the Bankruptcy Code, a plan must comply with

the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  The legislative history

of section 1129(a)(1) indicates that this provision encompasses the requirements of sections 1122

and 1123 of the Bankruptcy Code governing classification of claims and equity interests and

contents of the Plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989,

at 126 (1978).  As demonstrated below, the Plan complies with the applicable provisions of

sections 1122 and 1123 of the Bankruptcy Code in all respects.

### 1. The Plan's Classification of Claims and Equity Interests Satisfies Section 1122 of the Bankruptcy Code

30.     Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or

an interest in a particular class only if such claim or interest is substantially similar to the other

claims or interests of such class."  11 U.S.C. § 1122(a).  The Third Circuit "permits the grouping

of similar claims in different classes[]" as long as those classifications are reasonable.  *In re Jersey

City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987).  The Debtors are entitled to significant

flexibility in classifying claims and interests into different classes, but such classifications cannot

be "arbitrarily designed" to secure the approval of an impaired class when "the overwhelming

sentiment of the impaired creditors [is] that the proposed reorganization of the debtor would not

serve any legitimate purpose."  *John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,

987 F.2d 154, 158 (3d Cir. 1993).  Accordingly, the Third Circuit has held that the only

requirement for classification is that it be "reasonable." *In re Coastal Broad. Sys., Inc.*, 570 F.

App'x 188, 193 (3d Cir. 2014).

31.     In addition to Administrative Claims (including Professional Fee Claims), and

Priority Tax Claims, which need not be classified, the Plan classifies eight (8) Classes.  The

classification scheme of the Plan is reasonable and rational.  The separate classification of Claims

against and Equity Interests in each Debtor is based upon the differences in legal nature and priority

of such Claims and Equity Interests and valid business, factual, and legal reasons exist for

separately classifying the various Classes of Claims against, and Equity Interests in, the Debtors

under the Plan. *See* Kim Declaration ¶ 15.  The Plan's classification scheme was not proposed to

manipulate the vote or with the purpose of creating a consenting impaired Class. *Id*.  Finally, no

party has objected to the Debtors' classification scheme.  Therefore, the Court should approve the

classification scheme as set forth in the Plan as consistent with section 1122(a) of the Bankruptcy

Code.

### 2.  The Plan Satisfies Section 1123(a) of the Bankruptcy Code

32.     Section 1123(a) of the Bankruptcy Code lists seven applicable requirements that a

chapter 11 plan proponent must satisfy when seeking plan confirmation, each of which the Plan

fully complies with:

> a.      as required by section 1123(a)(1) of the Bankruptcy Code, the Plan
> designates Classes of Claims (other than Claims of the type described in
> sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code) and
> Classes of Equity Interests;

> b.      as required by section 1123(a)(2) of the Bankruptcy Code, Article III of the
> Plan specifies each Class of Claims or Equity Interests that is Unimpaired
> under the Plan;

> c.      as required by section 1123(a)(3) of the Bankruptcy Code, Article III of the
> Plan specifies the treatment of each Class of Claims and each Class of

14

Equity Interests that is Impaired under the Plan and sets forth the treatment of Impaired Claims and Equity Interests;

d.  as required by section 1123(a)(4) of the Bankruptcy Code, the Plan also complies with section 1123(a)(4) of the Bankruptcy Code, as the treatment of each Claim or Equity Interest in each particular Class is the same as the treatment of each other Claim or Equity Interest in such Class (except as otherwise agreed to by a Holder of a particular Claim or Equity Interest);

e.  as required by section 1123(a)(5) of the Bankruptcy Code, Article IV and various other provisions of the Plan, as well as the various documents and agreements set forth in the Plan Supplement, provides adequate means for its implementation;

f.  as required by section 1123(a)(6) of the Bankruptcy Code, the New Corporate Governance Documents do not provide for the issuance of non-voting equity securities; and

g.  as required by section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan and the New Corporate Governance Documents, as applicable, governing the manner of selection of any officer, director, or manager are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.  Further, the members of the board of directors or board of managers, or the sole manager, as applicable, of each Debtor were identified in Exhibit A to the Plan Supplement.

33.    In light of the foregoing, the Debtors respectfully submit that the requirements of section 1123(a) of the Bankruptcy Code have been satisfied.

### 3.  The Plan Complies with Section 1123(b)(1) of the Bankruptcy Code

34.    Section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into a chapter 11 plan.  Pursuant to section 1123(b) of the Bankruptcy Code, a plan may, among other things, (1) impair or leave unimpaired any class of claims or interests, (2) provide for the assumption or rejection of executory contracts and expired leases, (3) provide for the settlement or retention of claims or causes of action, (4) modify or leave unaffected the rights of holders of claims; and (5) include any other provision not inconsistent with the applicable provisions of the Bankruptcy Code.

15

35.     Consistent with section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan classified and describes the treatment for each Impaired and Unimpaired Class.  Class 3 (Secured Term Loan Claims), Class 8 (Equity Interests and Section 510(b) Claims) and depending on their treatment, Class 6 and Class 7 are Impaired.  Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 4 (Secured Notes Claims), Class 5 (General Unsecured Claims), and depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), are Unimpaired under the Plan.

### 4.    The Plan Complies with Section 1123(b)(2) of the Bankruptcy Code

36.     Pursuant to section 1123(b)(2) of the Bankruptcy Code, a plan may, subject to section 365 of the Bankruptcy Code, provide for the assumption, rejection, or assignment of an executory contract or unexpired lease.  11 U.S.C. § 1123(b)(2).  Section 365(a) of the Bankruptcy Code provides that a debtor, subject to the court's approval, may assume or reject any executory contract or unexpired lease upon a showing that such action will benefit the debtor's estate and is an exercise of sound business judgment.

37.     Article V of the Plan generally provides that all Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to reject Filed on or before the Effective Date; or (d) is identified on the Rejected Executory Contract and Unexpired Leases Schedule.  The Debtors or the Reorganized Debtors, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter.  Unless otherwise agreed upon in writing by the parties to the applicable Executory

16

Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtors or the Reorganized Debtors to a counterparty must be Filed with the Bankruptcy Court on or before thirty (30) days after the Effective Date.  Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Claims, Noticing, and Solicitation Agent at the address specified in any notice of entry of the Confirmation Order and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection.  Accordingly, the Plan is consistent with section 1123(b)(2) of the Bankruptcy Code.

### B.  The Releases, Exculpation and Injunction Provisions Should Be Approved.

38.     Article IX of the Plan provides the following: (a) a release by the Debtors, the Reorganized Debtors, and their Estates (the "Debtor Release"); (b) a consensual release by the Releasing Parties [5] of the Released Parties [6] (the "Third Party Release"); (c) an exculpation provision for the Exculpated Parties (the "Exculpation Provision"); and (d) a customary injunction provision intended to implement the Debtor Release, the Third Party Release, Exculpations, and

---

[5] Pursuant to the Plan, "*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) each Company Party; (b) the Term Loan Secured Party; (c) the Secured Noteholders; (d) the Indenture Trustee; (e) the Secured Notes Collateral Agents; (f) all Holders of Claims that (1) are deemed to accept the Plan or (2) are entitled to vote on the Plan and vote to accept the Plan; and (g) with respect to each of the Entities in clauses (a) through (f), such Entities' Related Parties, in each case solely to the extent the Releasing Party to whom such Related Party is related (i) received notice of the Confirmation Hearing in accordance with the approved solicitation procedures and (ii) is entitled to bind such Related Party to the release provided in Section 9.2 of the Plan under applicable non-bankruptcy law; *provided* that in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Section 9.2 of the Plan and such objection is not resolved before Confirmation.

[6] Pursuant to the Plan, "*Released Parties*" means, each of, and in each case in their capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Term Loan Secured Party; (d) the Secured Noteholders; (e) the Indenture Trustee; (f) the Secured Notes Collateral Agents; (g) all Holders of Claims; and (h) each Related Party of each Entity in clauses (a) through (g), solely (i) to the extent such Related Party is a Releasing Party and (ii) in their capacity as a Related Party; *provided however*, that in each case, an entity shall not be a Released Party if it timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved or withdrawn before Confirmation.

discharge provided by the Plan (the "Injunction Provision"). The Debtor Release, Third Party Release, Exculpation Provision, and Injunction Provision are integral components of the Plan and are consistent with the Bankruptcy Code and comply with applicable case law.

39. These provisions are (a) the product of good faith arm's-length negotiations, and given in exchange for good and valuable consideration by the Released Parties and Exculpated Parties, as applicable, (b) a valid exercise of the Debtors' sound business judgment, (c) consensual, (d) fair, equitable and reasonable, (e) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third Party Release, (f) narrowly tailored to the facts and circumstances of the Chapter 11 Cases, (g) in the best interests of the Debtors and their Estates, and (h) critical to obtaining the support of the Required Consenting Lenders. *See* Kim Declaration ¶¶ 51-57.

40. The objections to the proposed Third Party Release filed by the U.S. Trustee and the SEC have been resolved through revisions to the Plan. As discussed in more detail below, these provisions are consistent with the applicable provisions of the Bankruptcy Code and non-bankruptcy law and are necessary and integral components of the Debtors' reorganization. As is customary, the releases do not extend to Claims or Causes of Action arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence, and are given and made after due notice and opportunity to be heard. These provisions appropriately offer protections to those parties that meaningfully participated in and facilitated the Debtors' restructuring efforts, and should be approved as reasonable, in the best interest of the Debtors, their Estates, and their stakeholders, the product of good faith, arm's-length negotiations, in exchange for substantial consideration from various parties, including the Released Parties, and critical to obtaining the support of various constituencies for the Plan. *Id.*

18

### 1.  The Debtor Release Is Appropriate and Should Be Approved

41.     No party has objected to the Debtor Release set forth in Section 9.2 of the Plan, it is appropriate, and it should be approved.  The Debtor Release provides for the release and waiver of all claims, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, any right of setoff, counterclaim, or recoupment that could have been asserted by or on behalf of the Debtors or their Estates against any Released Party.  The Debtors have proposed the Debtor Release based on their business judgment and submit that the Debtor Release is reasonable and satisfies the standard that courts generally apply when reviewing these types of releases.  *See* Kim Declaration ¶ 52; Frizzley Declaration ¶ 11.  For releasing these claims, the Debtors are receiving substantial consideration in exchange, including, among other things, (i) the agreement of certain Released Parties' with respect to the impairment of their Claims while Class 5 General Unsecured Claims remain unimpaired, (ii) the support of the Released Parties, and (iii) substantial contributions made by certain Released Parties under the Plan.  *See In re Aleris*, No. 09–10478 (BLS), 2010 WL 3492664, at *20 (stating that where a debtor release is "an active part of the plan negotiation and formulation process, it is a valid exercise of the debtor's business judgment to include a settlement of any claims a debtor might own against third parties as a discretionary provision of a plan").

42.     A debtor may release claims under section 1123(b)(3)(A) of the Bankruptcy Code "if the release is a valid exercise of the debtor's business judgment, is fair, reasonable, and in the best interests of the estate."  *See U.S. Bank Nat'l Assoc. v. Wilmington Trust Co. (In re Spansion, Inc.*), 426 B.R. 114, 143 (Bankr. D. Del. 2010); *see also In re Washington Mut., Inc.*, 442 B.R. 314, 327 (Bankr. D. Del. 2011) ("In making its evaluation [whether to approve a settlement], the court must determine whether 'the compromise is fair, reasonable, and in the best interest of the

estate.'"").  A court's evaluation of the propriety of a debtor's release "is often dictated by the specific facts of the case."  *In re Washington Mut.*, 442 B.R. at 345; *In re Tribune Co.*, 464 B.R. 126, 186 (Bankr. D. Del. 2011) (same); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013) (courts evaluating a debtor's releases weigh "the equities of the particular case after a fact-specific review").   The standards for approval of a settlement and releases under section 1123(b)(3)(A) of the Bankruptcy Code are generally the same as those utilized in connection with Bankruptcy Rule 9019.  A settlement must only exceed "the lowest point in the range of reasonableness" of litigation outcomes.  *See In re Coram Healthcare Corp.*, 315 B.R. at 330.[7]

43.      Here, in exchange for these substantial benefits, the Debtors do not believe that they released any colorable claims worth pursuing against any Insiders of the Company or other Released Parties.  Frizzley Declaration ¶¶ 5-9.  As described in the Disclosure Statement and the Frizzley Declaration, the Debtors and Jill Frizzley ("Ms. Frizzley"), in her capacity as sole member of the Investigation Committee, conducted an investigation of actual and potential claims against the Debtors' officers, managers, members, equity holders, principals, employees, and any other individual that may be an insider (the "Insiders") of the Company and other proposed Released Parties, including but not limited to the Term Loan Secured Party, the Secured Noteholders, the Indenture Trustee, and the Secured Notes Collateral Agents.  *Id.*

---

[7] Some courts also consider the *Zenith* factors to determine whether a debtor release is appropriate: (a) whether there is an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate; (b) whether the non-debtor has made a substantial contribution; (c) the essential nature of the release to the extent that, without the release, there is little likelihood of success; (d) an agreement by a substantial majority of creditors to support the release, specifically if the impacted class or classes "overwhelmingly" vote to accept the plan; and (e) whether there is a provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the release.  The Debtors submit that these factors need not be considered by the Court, but nonetheless the Debtor Release satisfies the *Zenith* factors as well.

44.     The Investigation Committee was vested with the full and exclusive power and authority of the Board to (a) oversee an Investigation of any Potential Causes of Action of the Company that may exist against any Insiders and other proposed Released Parties under the Plan, and (b) determine what action should be taken on account of any such Potential Causes of Action, including pursuant to any plan of reorganization in connection with the Chapter 11 Cases. *Id*. at ¶ 5.  In making this determination, the Investigation Committee considered, among other things, (i) the cost and expense of pursuing any Potential Causes of Action, (ii) the likelihood of success on the merits, (iii) the likely complexity of any litigation involved, (iv) the interests of creditors, and (v) and other things such as indemnification rights and other potential defenses. Frizzley Declaration ¶ 13

45.     The Investigation Committee, after considering, the above-noted factors, determined that no viable Potential Causes of Action existed against the Insiders or other proposed Released Parties, including but not limited to the Term Loan Secured Party, the Secured Noteholders, the Indenture Trustee, and the Secured Notes Collateral Agents. *See id*. at ¶¶ 9, 13.

46.     Finally, the Plan provides for distributions on account of all or substantially all of the Claims held by the Released Parties and the Holders of Allowed General Unsecured Claims are not receiving less than they would have received in a liquidation.  Rather, pursuant to the Plan, these claimants are receiving a full recovery rather than nothing.

47.     In sum, the Debtor Release is narrowly tailored and (i) an essential component of the Plan, (ii) fair, reasonable, and in the best interests of the Estates, and (iii) constitutes a sound exercise of the Debtors' business judgement.  Additionally, sufficient consideration has been given in exchange for the Debtor Release.  Finally, the Debtor Release includes customary exemptions

for "fraud, willful misconduct or gross negligence"—it is not absolute.  Accordingly, the Debtor Release should be approved.

### 2.  The Third Party Release Is Consensual and Should Be Approved

48.    The Third Party Release is consensual and should be approved.  Section 9.2 of the Plan provides for an appropriately tailored consensual release in favor of the Released Parties only by and among the Releasing Parties, which are composed of: (i) each Company Party; (ii) the Term Loan Secured Party; (iii) the Secured Noteholders; (iv) the Indenture Trustee; (v) the Secured Notes Collateral Agents; (vi) all Holders of Claims that (a) are deemed to accept the Plan or (b) are entitled to vote on the Plan and vote to accept the Plan; and (vii) with respect to each of the Entities in clauses (i) through (vii), such Entities' Related Parties, in each case solely to the extent the Releasing Party to whom such Related Party is related (i) received notice of the Confirmation Hearing in accordance with the approved solicitation procedures and (ii) is entitled to bind such Related Party to the release provided in Section 9.2 of the Plan under applicable non-bankruptcy law; *provided* that in each case, an Entity shall not be a Releasing Party if it timely objects to the releases contained in Section 9.2 of the Plan and such objection is not resolved before Confirmation. *See* Plan, Section 9.2.  For the avoidance of doubt, the Plan does not contain any non-consensual third-party releases.[8]

49.    This Court has consistently held that a release is consensual where parties have received sufficient notice of a plan's release provisions and have had an opportunity to object to or opt out of the release but failed to do so.  *See, e.g.*, June 13, 2019 Hr'g Tr. 48:9-11, *In re Z*

---

[8] *Harrington v. Purdue Pharma L.P.*, 2024 WL 3187799, at *11 (2024) ("Nothing in what we have said should be construed to call into question consensual third-party releases offered in connection with a bankruptcy reorganization plan; those sorts of releases pose different questions and may rest on different legal grounds than the nonconsensual release at issue here.").

*Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del.) [Docket No. 384] ("With respect to third-party releases I'm prepared to find that they are consensual because of the opt-out box in the ballots."); *In re Alpha Ent. LLC*, No. 20-10940 (LSS) (Bankr. D. Del. Dec. 12, 2020) [Docket No. 592] (approving third party releases as consensual with opt-out mechanic); *In re Elk Petroleum, Inc.*, No. 19-11157 (LSS) (Bankr. D. Del. July 24, 2020) (same); *In re Melinta Therapeutics, Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Apr. 11, 2020) [Docket No. 520] (same); *In re GUE Liquidation Co.*, LLC, No. 19-11240 (LSS) (Bankr. D. Del. Dec. 19, 2019) [Docket No. 1037] (same); *In re David's Bridal, Inc.*, Case No. 18-12635 (LSS) (Bankr. D. Del. Jan. 4, 2019) [Docket No. 279] (same); *see also* June 9, 2023 Hr'g Tr. 13:1-9, *In re Clovis Oncology, Inc.*, No. 22-11292(JKS) (Bankr. D. Del.) [Docket No. 875] ("Where the disclosure is prominent and conspicuous, an opt-out mechanism is a valid means of obtaining consent. It is incumbent upon affected parties who have been properly served to protect their own rights. Parties that fail to act in response to a judicial process are routinely bound by the results of the process. Creditors have an obligation to read their mail and respond, if appropriate."); Dec. 14, 2022 Hr'g Tr. 21:12-16, *In re Legacy Ejy, Inc.*, No. 22-105800 (JKS) (Bankr. D. Del.) [Docket No. 695] ("[A]n opt-out mechanism and an opportunity to object are a valid means for obtaining consent, so these releases are consensual, and I would ask that you please strike the reference to non-consensual releases in that subparagraph."); Feb. 22, 2023 Hr'g Tr. 41:10-15, *In re Legacy FSRD*, No. 22-11051 (JKS) (Bankr. D. Del.) [Docket No. 332] ("[T]he third-party releases are consensual.  The Class 4 and 5 ballots, the notice of unimpaired non-voting status, the combined hearing notice, and the publication notice contain the release language and instructed how to opt out or object to the third-party releases contained in Section 8.4. of the plan."); Jan. 25, 2022 Hr'g Tr. 88:22-89:13, *In re Alpha Latam Mgmt., LLC*, No. 21-11109 (JKS) (Bankr. D. Del.) [Docket No. 511] ("As I have

23

previously ruled, an opt-out mechanism is a valid means of obtaining consent.  The court can imply consent from a creditor, not opting out or objecting to releases contained in a plan. Creditors have an obligation to read their mail and respond if appropriate.  This procedure is not unique and it's routinely utilized in the law."); *In re Triangle Petroleum Corp.*, No. 19-11025 (MFW) (Bankr. D. Del. June 14, 2019) [Docket No. 71] (approving third-party releases with respect to holders of claims that voted to reject or abstained from voting on the plan but failed to opt out of granting such releases); May 16, 2018 Hr'g Tr. 214:6-12, *In re EV Energy Partners, L.P.*, No. 18-10814 (CSS) (Bankr. D. Del. May 16, 2018) [Docket No. 252] ("And with regard to the third-party releases, I mean, look, I think they're consensual. I don't think they're nonconsensual. It's very clear in the notice, you know, shareholders and creditors have to read legal notices; that's just the way it is. And if you don't know that, then you're proceeding at your own risk…."); Oct. 2 Hr'g Tr. 62:10-14, *In re Gibson Brands*, No. 18-11025 (CSS) (Bankr. D. Del.) [Docket No. 873] ("I have ruled numerous times that 'check the box' isn't required for a creditor to be deemed—to have been deemed to consent to something, that it's sufficient to say, here's your notice, this is what's going to happen and if you don't object, you'll have been deemed to consent").[9]

50.     Here, the Third Party Release *is consensual*.  The Debtors provided clear and conspicuous notice of the Third Party Release.  In accordance with the Scheduling Order, the Non-Voting Status Notice, and the Combined Notice provided parties with timely, sufficient, appropriate, and prominent notice of the proposed Third Party Release and the scope of the Releasing Parties.  Indeed, the Non-Voting Status Notice was revised in connection with comments received from the U.S. Trustee in advance of the first day hearing in order to describe, in plain

---

[9] Due to the voluminous nature of the hearing transcripts cited, they are not attached hereto, but are available upon request.

English, the Third Party Release and parties' obligations to timely respond.  Of course, the Non-Voting Status Notice was approved by the Court in connection with its approval of the Scheduling Order as providing Holders in the Non-Voting Classes with sufficient notice.  *See* Scheduling Order ¶¶ 16-17.  Further, the Combined Notice, the form of which was also approved under the Scheduling Order, included the Third Party Release and contained prominent instructions on the binding nature of the Third Party Release if Holders did not timely object to providing the release.

51.    As described in the Voting Declaration, the Debtors complied with the Court-approved Solicitation Procedures and served the Non-Voting Status Notice and Combined Notice on all Holders in the Non-Voting Classes.  Voting Declaration ¶¶ 12-14.  Furthermore, the full text of the Third Party Release is posted on the Claims, Noticing, and Solicitation Agent's website under a separate tab titled "Balloting."  *See* Voting Declaration ¶ 14.  In response to the clear instructions and proper notice afforded to all parties, the Debtors received several responses from creditors and shareholders regarding the Third Party Release.  This demonstrates that service of the notice was effective, proper, sufficient, and otherwise appropriate and that all parties in interest had ample opportunity to evaluate and object to the Third Party Release if they wished to do so—indeed, two parties chose to opt out of the Third Party Release, as reflected in the Confirmation Order.

52.    It is also significant that all Holders of Allowed Unsecured Claims in Class 5 are Unimpaired under the Plan.  And, as described above, the Debtors agreed to excise the Third Party Release as it relates to Class 8 equity holders.  Accordingly, the Court should approve the Third Party Release as consensual, consistent with its many prior rulings.

### 3.  The Exculpation Provision Is Appropriate and Should Be Approved

53.     The Exculpation Provision is fair and appropriate under both applicable law and the facts and circumstances of the Chapter 11 Cases.  Section 9.3 of the Plan provides that the Exculpated Parties shall be released and exculpated from any Claims or Causes of Action arising out of acts or omissions in connection with these Chapter 11 Cases and certain related transactions, except for acts or omissions found to have been the product of fraud, gross negligence, or willful misconduct.  In determining the appropriateness of limiting liability under a plan of reorganization, such as through exculpation, the Third Circuit assesses such provisions in light of the particular circumstances at issue.  *See In re PWS Holding Corp.*, 228 F.3d 224, 247 (3d Cir. 2000) (rejecting any "*per se* rule barring any provision in a reorganization plan limiting the liability of third parties[,]" including exculpation, by virtue of section 524(e) of the Bankruptcy Code); *see also In re Indianapolis Downs*, 486 B.R. at 306 (concluding that exculpation provisions are appropriate for estate fiduciaries, committees and their members and a debtor's directors and officers).  Courts in the Third Circuit may approve exculpation provisions for acts or omissions in connection with the pursuit of confirmation of the Plan when such protection is necessary to the Debtors' restructuring efforts and given in exchange for fair consideration.  *See In re W.R. Grace & Co.*, 446 B.R. 96, 132–33 (Bankr. D. Del. 2011) (approving an exculpation clause exculpating non-debtor parties who were party to a settlement agreement); *W. Mining & Invs., LLC v. Bankers Trust Co.*, 2003 WL 503403, at *4 (D. Del. Feb. 19, 2003) (approving exculpation of the DIP lenders, bank lenders, and the committee from any liability in connection with the sale and liquidation of the debtors' assets, other than because of gross negligence or willful misconduct); *In re PWS Holding Co.*, 228 F.3d at 245-46 (approving an exculpation clause releasing a creditors' committee and its professionals from third party claims).

26

54.     Here, without protection from liability, the Exculpated Parties would have been unwilling to engage in the negotiation, formulation, and distribution of the Plan.  Further, as described above, the Exculpated Parties made substantial contributions to the successful reorganization of the Debtors.  Importantly, in response to comments from the U.S. Trustee and the SEC, the Debtors, and the Debtors' key stakeholders have agreed to modify the Exculpation Provision in the Plan to limit it to acts and omissions arising from the Petition Date through the Effective Date.  Thus, the Exculpation Provision is appropriately tailored to protect the Exculpated Parties from inappropriate litigation and exclude actions determined by Final Order to have constituted fraud, gross negligence, or willful misconduct.

55.     Indeed, the Exculpation Provision is consistent with established practice in this jurisdiction and others and should be approved.  *See, e.g.*, April 2, 2020 Hr'g Tr. 121:6-25, *In re Melinta Therapeutics Inc.*, No. 19-12748 (LSS) (Bankr. D. Del. Apr. 2, 2020) [Docket No. 502] (holding that exculpation applies only to estate fiduciaries and only through the effective date of the plan); *Emerge Energy Servs. LP*, 2019 WL 7634308, at *19 (Bankr. D. Del. Dec. 5, 2019) (holding that exculpation is only permitted for estate fiduciaries and temporally from the petition date through the effective date of a plan).  Each of the Exculpated Parties has participated in these Chapter 11 Cases in good faith.  Without their support, the Debtors would not have been able to execute their chapter 11 strategy and propose a Plan backed and accepted by the Voting Class.  Simply put, the Exculpated Parties are the principal reason there is a consensual Plan before the Court that provides for a full recovery to Holders of Allowed General Unsecured Claims. The Exculpation Provision is also narrowly tailored to address a discrete purpose: to protect estate fiduciaries who made critical contributions to the success of these Chapter 11 Cases from collateral

27

attacks related to good faith acts in connection with the Debtors' restructuring.  For these reasons, the Exculpation Provision is appropriate and should be approved.

### 4.    The Injunction Provision Is Appropriate

56.    Section 9.4 of the Plan implements the Plan's discharge, Debtor Release, Third Party Release, and Exculpation Provision by permanently enjoining all entities from commencing or continuing any action against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties on account of, in connection with, or with respect to any such Claims or Equity Interests discharged, released, exculpated, or settled under the Plan.  Injunction provisions are appropriate where "the injunction plays an important part in the debtor's reorganization plan." *See In re Drexel Burnham Lambert Grp., Inc*, 960 F.2d 285, 293 (2d Cir. 1992).  As a key component of the ultimate reorganization, the injunctions are necessary to preserve and enforce the discharge, Debtor Release, the Third Party Release, and the Exculpation Provision that are foundationally important to the Plan and the restructuring, and are narrowly tailored to achieve that purpose.  Therefore, the injunction provision is reasonable and appropriate, and this Court should approve the injunction together with the Debtor Release, the Third Party Release, and the Exculpation Provision.

### C.    The Plan Satisfies Section 1129(a)(2) of the Bankruptcy Code

57.    Section 1129(a)(2) of the Bankruptcy Code requires that plan proponents comply with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(2).  This provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018.  *See* H.R. Rep. No. 95-595, at 412 (1977) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").  As set forth

28

herein and in the Scheduling Motion, the Scheduling Order, the Voting Declaration, the
Publication Notice, the Combined Hearing Notice, and related supporting affidavits, the Debtors
have complied with all disclosure and solicitation requirements set forth in the Bankruptcy Code,
the Bankruptcy Rules, and applicable non-bankruptcy law governing notice, disclosure, and
solicitation in connection with the Plan and the Disclosure Statement.  The Disclosure Statement,
the Plan, the Combined Hearing Notice, and all other related documents were distributed to parties
(in accordance with the Scheduling Order), and acceptances were solicited from the Voting Class
by Stretto in compliance with sections 1125 and 1126 of the Bankruptcy Code.  The Publication
Notice was also timely published.  In addition to the foregoing, the Debtors also have complied
with all orders of the Court entered during the pendency of these Chapter 11 Cases.  Accordingly,
the requirements of section 1129(a)(2) of the Bankruptcy Code have been met and the applicable
provisions of the Bankruptcy Code, including sections 1125 and 1126 of the Bankruptcy Code
regarding disclosure and plan solicitation, have been satisfied.

### D.  The Plan Satisfies Section 1129(a)(3) of the Bankruptcy Code

58.    Section 1129(a)(3) of the Bankruptcy Code requires that "[t]he plan has been
proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  In the
Third Circuit, "good faith" requires that a "plan be 'proposed with honesty, good intentions, and a
basis for expecting that a reorganization can be effected with results consistent with the objectives
and purposes of the Bankruptcy Code.'"  *In re Zenith Electronics Corp.*, 241 B.R. 92, 107 (Bankr.
D. Del. 1999) (*quoting In re Sound Radio, Inc*., 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also
In re PPI Enters. (U.S.), Inc*., 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan
is to be considered in good faith 'if there is a reasonable likelihood that the plan will achieve a
result consistent with the standards prescribed under the Code.'").  Courts in this Circuit also

29

consider the totality of the circumstances surrounding a plan to determine if it has been proposed in good faith.  *See Azar v. THGH Liquidating LLC (In re THGH Liquidating LLC)*, 2020 WL 5409002, at *6 (D. Del. Sept. 9, 2020) ("[G]ood faith [under section 1129(a)(3)] is to be determined by the totality of the circumstances.").

59.     Here, the Plan has been proposed by the Debtors in good faith, with the legitimate and honest purposes of reorganizing the Debtors' ongoing businesses and enhancing the financial viability of each of the Debtors.  *See* Kim Declaration ¶ 22.  Further, the Plan is designed to maximize stakeholder recoveries and complies with the objectives and the mechanisms of the Bankruptcy Code.  The Debtors have proposed the Plan in consultation with the Debtors' board of directors, managers, management, legal, and financial advisors.  The Plan is the culmination and the direct result of the Debtors' extensive good faith arm's length negotiations with their key creditor constituencies, including the Required Consenting Lenders, regarding a plan structure and confirmation timeline that would minimize the Debtors' time in chapter 11 and correspondingly maximize value and increase their likelihood of emerging with their operations fully intact.  *Id*. The Plan eliminates or restructures a substantial portion of prepetition debt, enables the Debtors to maintain relationships with key vendors, and preserves hundreds of jobs.  No party has argued otherwise.  Accordingly, the Plan has been proposed in good faith and satisfies section 1129(a)(3).

### E.  The Plan Satisfies Section 1129(a)(4) of the Bankruptcy Code

60.     Under section 1129(a)(4) of the Bankruptcy Code, the Court must find that "[a]ny payment made or to be made by the proponent . . . for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case" be approved by the Court or subject to the Court's approval, as reasonable.  *See* 11 U.S.C. § 1129(a)(4).  The Plan provides that all Retained Professionals requesting compensation pursuant to sections 330, 331, or

30

503(b) of the Bankruptcy Code must be approved by the Court pursuant to final fee applications. Further, the Debtors' ordinary course professionals will be paid in the ordinary course as holders of Administrative Expense Claims consistent with the *Order (I) Authorizing Debtors to Employ Professionals Utilized in the Ordinary Course of Business, (II) Waiving Certain Information Requirements of Local Rule 2016-2, and (III) Granting Related Relief* [Docket No. [104]. Finally, section 2.3 of the Plan requires that, on the Effective Date, the Reorganized Debtors shall establish (if not already established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount, final fee applications be filed no later than forty-five (45) days after the Effective Date, and that after notice and a hearing, Professional Fee Claims shall be determined by the Bankruptcy Court.  Accordingly, the Debtors submit that the Plan satisfies the requirements of section 1129(a)(4).

**F.  The Plan Satisfies Section 1129(a)(5) of the Bankruptcy Code**

61.    Section 1129(a)(5)(A) of the Bankruptcy Code requires that the plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor…or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(i)-(ii).  Section 1129(a)(5)(B) of the Bankruptcy Code further requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.  11 U.S.C. § 1129(a)(5)(B).

62.    The Plan satisfies section 1129(a)(5) because the Debtors disclosed the identities and affiliations of all directors serving on the board of the Reorganized Debtors and officers of the

31

Reorganized Debtors in <u>Exhibit A</u> to the Plan Supplement.  The appointment to, or the continuation in, such offices of such persons is consistent with the interests of the Debtors' creditors and with public policy.  From and after the Effective Date, each director, officer, or manager of the Reorganized Debtors shall serve pursuant to the terms of the New Corporate Governance Documents.

63.     The proposed directors, managers, and officers of the Reorganized Debtors are all highly skilled, have relevant and valuable business and industry experience and will provide beneficial insight in conducting the Reorganized Debtors' business.  Accordingly, the Debtors submit that the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

### G.  Section 1129(a)(6) of the Bankruptcy Code is Inapplicable to the Plan

64.     Section 1129(a)(6) of the Bankruptcy Code requires that any governmental regulatory commission having jurisdiction over the rates charged by the debtor in the operation of its business approve any rate change provided for in a plan of reorganization.  *See* 11 U.S.C. § 1129(a)(6).  The Plan does not provide for the change of any rate that is within the jurisdiction of any governmental regulatory commission after the occurrence of the Effective Date.  Therefore, section 1129(a)(6) is inapplicable.

### H.  The Plan Satisfies Section 1129(a)(7) of the Bankruptcy Code

65.     Section 1129(a)(7) of the Bankruptcy Code requires that a plan be in the best interests of creditors and equity security holders of the Debtors.  *See* 11 U.S.C. § 1129(a)(7).  The "best interests" test requires that holders of impaired claims or interests that do not vote to accept the plan "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."

11 U.S.C. § 1129(a)(7)(A). The test focuses on individual creditors' claims rather than the class of claims. *See Bank of Am. Nat'l Tr. & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 441 n.13 (1999) (noting that "the 'best interests' test applies to individual creditors holding impaired claims, even if the class as a whole votes to accept the plan"). In evaluating the liquidation analysis, the Court must remain cognizant of the fact that "[t]he hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7." *See In re Affiliated Foods, Inc.*, 249 B.R. 770, 788 (Bankr. W.D. Mo. 2000) (internal citations omitted). Under section 1129(a)(7), the liquidation analysis applies only to non-accepting holders of impaired claims or equity interests. *See Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992).

66.     The Liquidation Analysis attached as <u>Exhibit C</u> to the Disclosure Statement demonstrates that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code and that under a chapter 7 liquidation holders of Claims and Interests would receive less than is projected under the Plan. *See* Kim Declaration ¶¶ 27-30.

67.     The uncontroverted assumptions and estimates in the Liquidation Analysis are appropriate in the context of these Chapter 11 Cases and are based upon the knowledge and expertise of the Debtors' professionals and personnel who have extensive knowledge of the Debtors' business and financial affairs as well as relevant industry and financial experience. *See* Kim Declaration ¶ 28. In light of the foregoing, the Plan satisfies the requirements of section 1129(a)(7).

68.     The "best interests" test is not implicated with respect to the following Classes: Holders of Class 3 (Secured Term Loan Claims) which voted in favor of the Plan; and Holders of Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 4 (Secured Notes Claims),

Class 5 (General Unsecured Claims) and, depending on their treatment Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), which were Unimpaired and, thus, were conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.[10]  In contrast, the "best interests" test must be applied with respect to Claims in Class 8 (Equity Interests and Section 510(b) Claims) and, depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), pursuant to which Holders will not receive any distribution under the Plan and thus are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

69.     The Liquidation Analysis is sound and reasonable and incorporates justified assumptions and estimates regarding the Debtors' assets and claims, such as (i) the additional costs and expenses that would be incurred by the Debtors as a result of a chapter 7 trustee's fees and retention of new professionals, (ii) the delay and erosion of value that would be caused to the Debtors' assets, (iii) the reduced recoveries caused by an accelerated sale or disposition of the Debtors' assets by the chapter 7 trustee, and (iv) other potential claims that may arise in a chapter 7 liquidation.  The estimates regarding the Debtors' assets and liabilities that are incorporated into the Liquidation Analysis are based upon the knowledge and familiarity of the Debtors' advisors with the Debtors' business and their relevant experience in chapter 11 proceedings.   As such, the Debtors' Liquidation Analysis should be afforded deference. *See* Kim Declaration ¶ 28.

70.     Here, as set forth in the Liquidation Analysis and the Kim Declaration, all holders of Impaired Claims or Interests will receive or retain property value, as of the Effective Date, in an amount that is at least equal to the value of what they would receive if the Debtors were

---

[10]  If, however, the Plan is not confirmed and the Debtors are forced to liquidate their assets under the assumptions set forth in the Liquidation Analysis, then Holders of General Unsecured Claims stand to receive nothing.

liquidated under chapter 7 of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

> **I.  The Plan Does Not Satisfy Section 1129(a)(8) of the Bankruptcy Code but May Still Be Confirmed Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

71.     Section 1129(a)(8) of the Bankruptcy Code provides: "With respect to each class of claims or interests (A) such class has accepted the plan; or (B) such class is not impaired under the plan."  11 U.S.C. § 1129(a)(8).  Under the Plan, Holders of Claims in Class 1 (Other Priority Claims), Class 2 (Other Secured Claims), Class 4 (Secured Notes Claims), Class 5 (General Unsecured Claims) and, depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), are Unimpaired and are conclusively presumed to have voted to accept the Plan.  More than the requisite number of Holders and Claim amounts in the Voting Class have affirmatively voted to accept the Plan: Class 3 (Secured Term Loan Claims) voted 100% in number and 100% in amount to accept the Plan.

72.     Although Class 8 (Equity Interests and Section 510(b) Claims) and, depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), are deemed not to have accepted the Plan, the Plan may nonetheless be confirmed over such rejections because, as set forth below, the Plan satisfies the requirements for cramdown under section 1129(b) of the Bankruptcy Code.

> **J.  The Plan Satisfies Section 1129(a)(9) of the Bankruptcy Code**

73.     Section 1129(a)(9) of the Bankruptcy Code requires that holders of allowed claims entitled to priority under sections 503(b) and 507(a) receive payment in cash under the plan, unless the holder of a particular claim agrees to a different treatment with respect to such claim.  *See* 11 U.S.C. § 1129(a)(9).  Article II of the Plan satisfies this requirement by providing for the full

35

payment, or such other treatment as agreed with any Holder of such Claims(s), of Administrative

Claims (including Professional Fee Claims), Priority Tax Claims, and Statutory Fees. Further,

section 3.2 of the Plan provides for payment in full of Other Priority Claims. Therefore, the Plan

complies with section 1129(a)(9) of the Bankruptcy Code.

### K.  The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code

74.      Section 1129(a)(10) of the Bankruptcy Code requires at least one class of impaired

claims to affirmatively accept a plan "without including any acceptance of the plan by any insider."

11 U.S.C. § 1129(a)(10). Section 1129(a)(10) was promulgated to conform to "the original

intention of Congress to reverse pre-[Bankruptcy] Code Chapter XII cases, which permitted the

use of cramdown powers without the consent of any class of creditors." 7 COLLIER ON

BANKRUPTCY ¶ 1129[10][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.). Class 3

(Secured Term Loan Claims) is an Impaired Class of Claims that voted to accept the Plan. Thus,

the Plan satisfies section 1129(a)(10) of the Bankruptcy Code.

### L.  The Plan Satisfies Section 1129(a)(11) of the Bankruptcy Code

75.      Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that

the Plan is feasible prior to confirmation. *See* 11 U.S.C. § 1129(a)(11). Specifically, it requires

that confirmation "is not likely to be followed by the liquidation, or the need for further financial

reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation

or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). The feasibility test requires

that the Court determine whether a plan may be implemented and has a reasonable likelihood of

success. *See United States v. Energy Res. Co*., 495 U.S. 545, 549 (1990). Section 1129(a)(11) of

the Bankruptcy Code does not require a guarantee of a plan's success; rather, applicable case law

makes clear that the appropriate question is whether a plan offers a reasonable assurance of success.

36

*In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011) ("Feasibility does not require that success be guaranteed but rather only a reasonable assurance of compliance with plan terms" (internal quotation omitted)).   A debtor must establish a chapter 11 plan's feasibility by a preponderance of the evidence.  *In re W.R. Grace & Co.*, 475 B.R. 34, 114 (Bankr. D. Del. 2012) (holding that "[t]he debtor bears the burden of proof on this inquiry, and must show by a preponderance of the evidence that a reorganization plan is feasible").

76.    Whether a plan is feasible turns on whether there is a reasonable probability that the plan provisions can be implemented and performed.  The purpose of the feasibility test is to protect against visionary or speculative plans.  *In re Indianapolis Downs*, 486 B.R. at 298.  To assess feasibility, courts look to a variety of factors, including: (a) the capital structure and earning power of the reorganized debtors; (b) applicable economic conditions; (c) the ability of the reorganized debtors to meet capital expenditure requirements; and (d) the ability of the debtor's management and the likelihood that current management will continue.  *See, e.g., In re Paragon Offshore PLC*, 2016 WL 6699318, at *16 (CSS) (Bankr. D. Del. Nov. 15, 2016) (also stating that "[t]he [d]ebtors are not required to view their business and economic prospects in the worst possible light" (internal quotation omitted)); *In re Sound Radio*, 93 B.R. at 856.

77.    Based on the transactions contemplated in the Plan, the Financial Projections, the Scroggins Declaration, and the Kim Declaration, there are sufficient means of implementing the Plan that offer a reasonable assurance of success.  The Plan represents a robust and involved restructuring strategy developed over months of negotiations among sophisticated parties and their professionals with the goal of deleveraging the Debtors' balance sheet.  The Debtors, in consultation with their advisors, spent significant time analyzing their anticipated financial

37

obligations on and after the Effective Date and have determined that the Debtors should be able to meet all of their financial obligations under the Plan.  *See* Kim Declaration ¶ 37.

78.     The Plan will significantly deleverage the Debtors' balance sheet, including the elimination of $230 million in funded debt, which will position the Reorganized Debtors for post-emergence success.  *See* Kim Declaration ¶ 37.  Further, the Plan provides for amendments to the Secured Term Loan Credit Documents, which will result in a lower interest rate and extended maturity, thereby preserving liquidity and improving cash flow on a go-forward basis.  *See* Kim Declaration ¶ 5.  Lastly, the Financial Projections included in the Disclosure Statement demonstrate that the Debtors will be well-positioned when they emerge from bankruptcy to execute their business plan and to meet their obligations as they come due in the ordinary course of business.  *Id.*

79.     Accordingly, among other things, the Financial Projections, and the Scroggins Declaration in support thereof, indicate that implementation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors.  Accordingly, the Debtors believe the Plan is feasible and satisfies section 1129(a)(11) of the Bankruptcy Code.

### M. The Plan Complies with Section 1129(a)(12) of the Bankruptcy Code

80.     Section 1129(a)(12) requires that all fees currently payable under 28 U.S.C. § 1930 "have been paid or the plan provides for the payment of all such fees on the effective date." 11 U.S.C. § 1129(a)(12).  Section 507 of the Bankruptcy Code provides that any such fees are afforded priority as administrative expenses.  11 U.S.C. § 507(a)(2).  Sections 2.4 and 11.3 of the Plan provide for the payments of fees under 28 U.S.C. § 1930.  The Debtors or the Reorganized Debtors, as applicable, will continue to pay such statutory fees until the Chapter 11 Cases are closed by final decree.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

### N.  Section 1129(a)(13) of the Bankruptcy Code is Satisfied

81.     The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code because section 4.10 of the Plan provides that from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.[11]

### O.  The Plan Satisfies "Cramdown" Requirements Under Section 1129(b) of the Bankruptcy Code

82.     Section 1129(b)(1) of the Bankruptcy Code provides that if all applicable requirements of section 1129(a) of the Bankruptcy Code are met other than section 1129(a)(8), a plan may be confirmed so long as the requirements set forth in section 1129(b) of the Bankruptcy Code are satisfied.  To confirm a plan that has not been accepted by all impaired classes (thereby failing to satisfy section 1129(a)(8) of the Bankruptcy Code), the plan proponent must show that the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting impaired classes.  11 U.S.C. § 1129(b)(1).

83.     The Voting Class has voted in favor of the Plan.  However, Holders of Claims and Interests in Class 8 (Equity Interests and Section 510(b) Claims) and, depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), are not receiving or retaining any property on account of their Claims or Equity Interests and, as such, are deemed to have rejected the Plan (pursuant to section 1126(g) of the Bankruptcy Code).  With respect to Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), such Claims and Equity Interests may be Unimpaired or Impaired.

---

[11] In addition, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code are inapplicable here, where each of the Debtors has no domestic support obligations, is not an individual, and is a moneyed, business or commercial corporation.  Kim Declaration ¶ 40.

39

84.     The Plan is nonetheless confirmable because, as discussed in greater detail below, it satisfies the "cram down" requirements of section 1129(b) of the Bankruptcy Code as to these Classes.  Under section 1129(b) of the Bankruptcy Code, the court may "cram down" a plan over the dissenting vote of an impaired class or classes of claims or interests deemed to reject a plan so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such dissenting class or classes.

### 1. The Plan Does Not Discriminate Unfairly

85.     The Plan does not discriminate unfairly with respect to Classes deemed to reject the Plan.  Although the Bankruptcy Code does not provide a standard for determining when "unfair discrimination" exists, courts typically examine the facts and circumstances of the particular case to make the determination. *See In re 203 N. LaSalle St. Ltd. P'ship*., 190 B.R. 567, 585 (Bankr. N.D. Ill. 1995), *rev'd on other grounds*, 526 U.S. 434 (1999) (noting "the lack of any clear standard for determining the fairness of a discrimination in the treatment of classes under a Chapter 11 plan" and that "the limits of fairness in this context have not been established").

86.     Generally, courts have held that a plan unfairly discriminates in violation of section 1129(b) only if similarly situated claims receive materially different treatment without a reasonable basis for the disparate treatment. *See In re Exide Techs.*, 303 B.R. at 78 ("The hallmarks of the various tests have been whether there is a reasonable basis for the discrimination, and whether the debtor can confirm and consummate a plan without the proposed discrimination."). There is no unfair discrimination if, taking into account the particular facts and circumstances of the case, there is a reasonable basis for the disparate treatment. *See Aztec Co.*, 107 B.R. at 590 ("[R]ecogniz[ing] the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination.")

40

87.     Class 8 (Equity Interests and Section 510(b) Claims), and depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are Impaired and Holders of Claims and Interests in such Classes are deemed to reject the Plan because such Classes shall receive no distribution under this Plan on account of such Claims and Interests.  Here, the Plan's treatment of Classes deemed to reject the Plan (the only rejecting classes) is proper.  While Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) may be Unimpaired depending on their treatment, these Classes are not similarly situated compared to Classes deemed to reject the Plan because they would be Unimpaired through reinstatement of their Claims and Interests to preserve the Debtors' corporate structure and avoid the need to unwind and recreate the corporate structure. *See In re Ion Media Networks, Inc.*, 419 B.R. 585, 601 (Bankr. S.D.N.Y. 2009) ("The Plan's retention of intercompany equity interests for holding company purposes constitutes a device utilized to allow the Debtors to maintain their organizational structure and avoid the unnecessary cost of having to reconstitute that structure.").  Further, reinstatement of Claims and Interests in Classes 6 and 7 (the reason these classes would be Unimpaired) does not affect the economic substance of the Plan for the Debtors' stakeholders. *See id.* at 601 ("This technical preservation of equity is a means to preserve the corporate structure that does not have any economic substance and that does not enable any junior creditor or interest holder to retain or recover any value under the Plan.").  Accordingly, the Plan does not discriminate unfairly with respect to the Deemed Rejecting Classes and satisfies section 1129(b) of the Bankruptcy Code.

### 2.  The Plan Is Fair and Equitable

88.     A plan is considered "fair and equitable" pursuant to sections 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii) of the Bankruptcy Code if, with respect to a class of impaired unsecured claims or interests, the plan provides that no holder of any junior claim or interest will receive or retain

41

under the plan on account of such junior claim or interest any property. *See* 11 U.S.C. § 1129(b)(2)(B)–(C). This central tenet of bankruptcy law, known as the "absolute priority rule," requires that if the holders of claims in a particular class receive less than full value for their claims, no holders of claims or interests in a junior class may receive any property under the plan. *See 203 N. LaSalle*, 526 U.S. at 441-42. In addition, for a plan to be "fair and equitable," no class of claims or interests senior to the impaired dissenting class is permitted to receive more than the full value of its senior claims or interests under the plan. *See In re Chemtura Corp.*, 439 B.R. 561, 592 (Bankr. S.D.N.Y. 2010).

89. The Plan provides that Holders of Allowed General Unsecured Claims shall receive a 100% recovery. Class 8 (Equity Interests and Section 510(b) Claims), and depending on their treatment, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are Impaired and Holders of Claims and Interests in such Classes are deemed to reject the Plan because such Classes shall receive no distribution under this Plan on account of such Claims and Interests. No Holder of any Claim or Equity Interest subordinate to Class 8 (Equity Interests and Section 510(b) Claims)—will receive or retain property under the Plan on account of their Claim or Interest. No Holder of a Claim or Interest in a Class senior to Class 8 (Equity Interests and Section 510(b) Claims) and, to the extent not reinstated for administrative convenience, Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), is receiving more than 100% recovery on account of its Claim or Equity Interests. To the extent Classes of Claims or Interests senior in priority to Class 8 (Equity Interests and Section 510(b) Claims) and, to the extent applicable Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests), are Impaired and entitled to vote on the Plan (*i.e.*, Class 3 (Secured Term Loan Claims), they voluntarily accepted such treatment in their support for the Plan.

90.     As set forth herein, although Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) may be reinstated under the Plan and, therefore, would be Unimpaired, such treatment is for the purposes of preserving the corporate structure of the Reorganized Debtors and does not affect the economic substance of the Plan for the Debtors' stakeholders.

91.     For these reasons, the Plan is "fair and equitable" and consistent with the requirements of section 1129(b) of the Bankruptcy Code.

### P.  The Plan Satisfies Section 1129(c) of the Bankruptcy Code

92.     Subject to certain conditions, section 1129(c) of the Bankruptcy Code requires that the Court confirm only one plan.  The Plan is the only plan being confirmed in these Chapter 11 Cases with respect to the Debtors and thus section 1129(c) of the Bankruptcy Code is satisfied.

### Q.  The Plan Satisfies Section 1129(d) of the Bankruptcy Code

93.     Section 1129(d) of the Bankruptcy Code states that "the court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933."  11 U.S.C. § 1129(d).  The purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act.  *See* Kim Declaration ¶ 49. Thus, the Plan satisfies section 1129(d) of the Bankruptcy Code.

### R.  Section 1129(e) of the Bankruptcy Code Is Inapplicable to the Plan

94.     None of these Chapter 11 Cases is a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

## IV.    Cause Exists to Waive the Stay of the Confirmation Order

95.     Bankruptcy Rule 3020(e) provides that a confirmation order "is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  The Debtors

43

respectfully submit that cause exists to waive and eliminate the stay of the Confirmation Order so that such order may be effective immediately upon its entry.

96.     A stay of the Confirmation Order will delay the Debtors' implementation of the Plan, extending the time that the Debtors must remain in chapter 11.  The Plan (including all documents necessary to effectuate the Plan) enjoys overwhelming support among the Debtors' creditors entitled to vote on the Plan, and is the product of extensive, good-faith negotiations among the Debtors and their key stakeholders, including those voting creditors.

97.     All the conditions precedent to the Effective Date can be promptly fulfilled (or waived, as applicable), and each day the Debtors remain in chapter 11 they incur significant administrative and professional costs.  Extending the length of time the Debtors remain in chapter 11 would only serve to increase the administrative and professional costs incurred by the Debtors' Estates, as well as the opportunity costs the Debtors experience while the Chapter 11 Cases continue.  Deferring the Effective Date at this juncture could detrimentally impact the Debtors' relationships with customers, employees, and vendors, and could negatively impact value for stakeholders across the enterprise.  These are unnecessary risks given the unanimous support for the Plan by voting economic stakeholders.

98.     For all of these reasons, the Debtors request a waiver of the stay imposed by the Bankruptcy Rules so that the Court's order confirming the Plan may be effective immediately upon its entry.

*[Remainder of Page Intentionally Left Blank]*

44

## <u>CONCLUSION</u>

99.     For all of the foregoing reasons, the Debtors submit that (a) the Disclosure Statement meets the requirements of sections 1125 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, and any applicable rules, laws, and regulations and is appropriate and satisfactory and should be approved in all respects, and (b) the Plan complies with all of the requirements of section 1129 of the Bankruptcy Code and should be confirmed in all respects.

Dated: July 9, 2024
      Wilmington, Delaware

Respectfully submitted,

*/s/ Aaron H. Stulman*
L. Katherine Good (No. 5101)
Aaron H. Stulman (No. 5807)
Gregory J. Flasser (No. 6154)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: kgood@potteranderson.com
      astulman@potteranderson.com
      gflasser@potteranderson.com

*Counsel to the Debtors and Debtors in Possession*